[Civ. No. 16927.   First Dist., Div. One.   Feb. 21, 1957.]

FRANK J. GLAESER et al., Appellants, v. CITY OF BERKELEY et al., Respondents.

[Civ. No. 16928.   First Dist., Div. One.   Feb. 21, 1957.]

JOSEPH R. MANSFIELD et al., Appellants, v. CITY OF BERKELEY et al., Respondents.

[Civ. No. 16929.   First Dist., Div. One.   Feb. 21, 1957.]

BRITTON SICKLER, Appellant, v. CITY OF BERKELEY et al., Respondents.

Cornish & Cornish, Francis T. Cornish and Howard W. Wayne for Appellants.

Fred C. Hutchinson, City Attorney, and Robert T. Anderson, Assistant City Attorney, for Respondents.

WOOD (Fred B.), J.—These three cases (consolidated for trial and appeal) involve the effect upon the plaintiffs of certain amendments to the Berkeley fire and police pension ordinances. Plaintiffs (13 firemen and one policeman) were in the employ of the city at the time of these amendments, June 16, 1944. They have since retired.

These amendments changed the rate of retirement pay from one that was geared to the going rate of pay for active members of the force (fluctuating upward with increases in salary rates but not downward with decreases in those rates)[1] to a fixed retirement pay rate geared to the average salary received by the retired employee during the three years immediately preceding the date of his retirement.[2]

These amendments could not and did not affect persons who had retired prior to their effective date. (*Terry* v. *City of Berkeley*, 41 Cal.2d 698 [263 P.2d 833], as to policemen; *Eichelberger* v. *City of Berkeley*, 46 Cal.2d 182 [293 P.2d 1], as to firemen.)

Did these amendments affect policemen and firemen who were then members of the force and not yet retired?

The answer is furnished by a decision of our Supreme Court rendered in September, 1955, upwards of 10 months after the rendition of judgment in the instant cases. It held that a similar amendment of the charter of the city of Long Beach could and did operate only prospectively, not retro-

---

[1]Berkeley Ordinance No. 2188-N.S. as amended by No. 2254-N.S. (firemen); Ordinance No. 2250-N.S. (policemen).

[2]Ordinance No. 2624-N.S. and No. 2626-N.S. (policemen); Ordinance No. 2625-N.S. and No. 2627-N.S. (firemen).

spectively, as to certain firemen and policemen who were in the employ of the city at the time of the amendment. (*Allen* v. *City of Long Beach,* 45 Cal.2d 128 [287 P.2d 765].) These were city employees who, according to the charter prior to the amendment, would be entitled upon retirement to receive a fluctuating allowance equal to one-half of the going rate of pay attached to the position held prior to retirement. The amendment, if operative as to them, would change the retirement allowance to a fixed rate, one-half the average salary earned by the employee during the five years preceding his retirement.

This, the Supreme Court observed, would if effective operate as a substantial decrease without offering any commensurate advantages (pp. 131 and 132). That, coupled with the absence of any claim that the amendment was necessary to preserve or protect the pension program applicable to the employees who would be adversely affected, and the lack of any indication that the city would have difficulty in meeting its obligations without making the amendment applicable to them (p. 133), would result in an unreasonable and, therefore, ineffective modification, as to such employees.

The court expressed the governing principles in these words: "An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments in accord with changing conditions and at the same time maintain the integrity of the system. [Citations.] Such modification must be reasonable, and it is for the courts to determine upon the facts of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages." (P. 131.)

We see no basis for distinguishing the instant case from the Allen case. The disadvantages of the proposed change are potentionally greater here than there. Here, prior to the challenged amendment, the retirement allowance would go up but not down with changes in the salary rate, whereas in Long Beach they followed salary changes down as well as up. Indeed, in the Allen case the Supreme Court referred to the Terry case as one that involved an amendment (the Berkeley 1944 amendment here involved) similar to the Long

Beach amendment and as holding that "the change from a fluctuating to a fixed pension was detrimental to pensioners." (P. 132 of 45 Cal.2d.)

Also, we observe no indication in the pleadings or in the findings that the 1944 amendments were necessary to preserve or protect the pension program applicable to persons in office at the time and no indication that Berkeley would have difficulty in meeting its obligations to firemen and policemen in its employ at the time of the amendments.

The defendants seek to distinguish the Allen case upon a number of grounds, none of which seems logically sound to us.

The fact that the Long Beach pension amendment included two features (an increase in the rate of employee contribution and a requirement that the employee contribute for the period of any military leave) in addition to the change in the retirement allowance rate, does not distinguish the Allen case from the instant case, as we read the Supreme Court's opinion. The court viewed each of those three changes separately from the other two and treated each as an unreasonable modification.[3]

Nor do we find a significant distinguishing feature in the fact that in 1938 a retired Berkeley fireman enjoyed a fixed allowance which in 1939 was changed to a fluctuating allowance so that the 1944 amendment was merely a return to the 1938 status. ▮ As we read the Supreme Court's decision the reasonableness of a modifying amendment is to be tested by its effect upon the existing law, not by comparing the amendment with the law as it read sometime in the past.

The defendants also argue that in 1944 the cycle of postwar inflation had not yet commenced and "the common thinking of the time was that there would be widespread unemployment after the war, and an accompanying economic tapering off from the high wartime levels," whereas the Long Beach amendment was made in 1951 after the spiral of inflation had started. This is highly speculative. We find no basis for it in the record upon this appeal.

▮ Next, defendants contend that the amendatory ordinances contained recitals which demonstrated that the city

---

[3]Incidentally, in *Cochran* v. *City of Long Beach*, 139 Cal.App.2d 282 [293 P.2d 839], the court had occasion to consider that feature of the Long Beach amendment which, if operative, would have changed the employees' retirement allowance from a fluctuating to a fixed basis and held it inoperative upon the authority of the Allen case, making no mention of the other two changes discussed in the Allen case.

council believed it was merely clarifying the language of the ordinances, not changing them, in 1944. The fact that the council may have thought it was not making a change can hardly serve to validate a change which but for such mistaken view could not operate retrospectively.

Defendants argue that the "integrity" of the pension system is strengthened when it can be determined with certainty what the obligations of the system are. This element was equally present in the Allen case but apparently was not deemed of sufficient importance by the Supreme Court to merit comment. Furthermore, we do not think this was the kind of protection of the integrity of a pension system which the court had in mind when, on page 133 of 45 Cal.2d, it used the expression "necessary to preserve or protect the pension program applicable to persons employed before" the amendment, particularly in view of the context in which those words appear.

Defendants invoke a number of cases that were decided prior to the Allen case. Some of them are consistent, and some are not, with the holding in that case. We assume that the Supreme Court considered all of them, whether or not mentioned in its opinion in the Allen case. There would be no point in our undertaking a further review of those cases.

■ Defendants seem to overlook the fact that the principles enunciated in the Allen case have reference to changes in a pension or retirement ordinance, charter or statute which does not contain an express reservation of legislative power to modify the system, such as the familiar clause that reserves legislative power to amend or repeal the corporation laws. (Concerning the scope and effect of such a clause, see 6A Cal.Jur. 132-134, Corporations, § 52, and 13 Am.Jur. 233-243, Corporations, §§ 90-96.) In the absence of such a reservation (in Berkeley as in Long Beach) a person serving under a pension system "acquires a vested contractual right to a substantial pension," a right which "arises before the happening of the contingency which makes the pension payable" and "cannot be constitutionally abolished by subsequent changes in the law," there being an *"implied qualification* that the governing body may make *reasonable modifications and changes* before the pension becomes payable." (*Wallace v. City of Fresno*, 42 Cal.2d 180, 183 [265 P.2d 884]; emphasis added.) The Allen case furnishes the tests which are to be used in determining the reasonableness of a particular modification.

Upon a second trial, if one is held, the parties should be permitted to amend their pleadings to present issues additional to those heretofore presented if they are so advised and if the trial court finds the proposed new issues appropriate.

The judgments are reversed.

Peters, P. J., and Bray, J., concurred.