[L. A. No. 24354. In Bank. June 6, 1958]

RUTH ABBOTT et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[L. A. No. 24355. In Bank. June 6, 1958.]

EVA A. ADAMS et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[L. A. No. 24356. In Bank. June 6, 1958.]

MARGARET ABNEY, as Special Administratrix, etc., et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

[L. A. No. 24357. In Bank. June 6, 1958.]

FRED H. BEHRNS et al., Appellants, v. CITY OF LOS. ANGELES et al., Respondents.

[L. A. No. 24358. In Bank. June 6, 1958.]

ELIZABETH M. MASON et al., Appellants, v. CITY OF LOS ANGELES et al., Respondents.

Kenneth Sperry for Appellants.

Ball, Hunt & Hart and Joseph A. Ball as Amici Curiae on behalf of Appellants.

Roger Arnebergh, City Attorney, Bourke Jones and John J. Tully, Jr., Assistant City Attorneys, Weldon L. Weber and John F. Feldmeier, Deputy City Attorneys, for Respondents.

SCHAUER, J.—In these five cases, consolidated for trial, plaintiffs appeal from adverse judgments in their actions seeking to enforce pension payments upon a fluctuating basis (i.e., based upon salaries currently being paid from time to time) rather than in fixed amounts determined at the time the pension is granted. Defendants are the city of Los Angeles and its board of pension commissioners. We have concluded that charter amendments by which fixed payment pensions were substituted for fluctuating may not properly be applied to plaintiffs, and that the judgments should be reversed.

The 673 plaintiffs in the Abney and the 30 plaintiffs in the Behrns cases were appointed as members of the fire or the police department of defendant city prior to July 1, 1925, and retired therefrom subsequent to that date upon pensions which have been paid in fixed amounts. In the Abbott, Adams and Mason cases the 79 plaintiffs are widows who were granted fixed-payment pensions upon the deaths of their respective husbands who had been employed in the fire or police department prior to, and died after, January 17, 1927. (In the Abbott case the husbands of the 17 plaintiffs, with one exception, had retired prior to January 17, 1927.) In each of the five actions the first count of the complaint is for a declaratory judgment to the effect that each of such plaintiffs is entitled to a fluctuating pension upon the ground that certain city charter amendments of July 1, 1925, and January 17, 1927, substituting fixed pensions for previously provided fluctuating pensions, are as to them unconstitutional and invalid; the second count seeks a money judgment for the difference, commencing three years prior to the date each plaintiff filed a claim therefor with defendants, between the amount of the fixed pension paid and the amount of the fluctuating pension to which plaintiffs claim to be entitled. It appears that in addition to the present plaintiffs (some 782 in number), another 2,000 persons occupy a similar legal relationship to defendant city.

Following findings of the court more fully discussed here-

inafter, judgments were entered declaring that the pertinent charter amendments constituted reasonable and valid changes in the pension system with respect to plaintiffs and that the only pensions to which plaintiffs are entitled are the substituted fixed amount ones the city has been paying; that the rights and duties of the respective parties have ripened into a "rule of property" which should not now be disturbed; and that plaintiffs are barred by laches and the statute of limitations. These appeals followed.

For more than 20 years prior to July, 1925, pertinent statutes, ordinances, and provisions of the city charter of Los Angeles, provided a fluctuating retirement pension after 20 or more years of service for members of the police and fire departments, of 50 per cent of the salary that might be fixed *from time to time*, even after a member's retirement, for the position held one year prior to retirement. (Effective in January, 1923, a further 1⅔ per cent of such salary was added for each year of service in excess of 20 years and less than 30 years.) A like fluctuating pension was also provided in case of service-connected disability. If a member died as a result of such disability or after retirement, a fluctuating pension was payable to his widow, children or dependent parents; this pension amounted to one-half the salary fixed *from time to time* for the position held by the member at the time of his death or one year prior to the date of retirement. (See e.g., Charter of 1889, art. XI½, §§ 2, 3, 4, as amended; Stats. 1923, pp. 1412-1414.)

In article XVII of the Charter of 1925 (Stats. 1925, p. 1085), sections 181, 182, and 183 were substituted for sections 2, 3, and 4 of the Charter of 1889, above referred to, and section 184 was added. (For convenience, changes effected by the Charter of 1925 will be termed charter amendments.) So far as here material, sections 181, 182, and 183 were substantially the same as those they replaced. However, the new section 184 provided that "any increase or decrease of salaries of active members of the Fire and Police Departments shall not in anywise affect the amount of the pensions paid to retired members of such departments, nor shall the amount of such pensions be changed for any other reason." In other words, pensions thereafter granted to retired members would be upon a fixed rather than a fluctuating basis. Widows' pension rights were unaffected by section 184, and continued upon a fluctuating basis until January, 1927, when, by amendment, the section was in terms made applicable

to the pensions of widows and other members of families. (Stats. 1927, pp. 2023-2024.) Widows' pensions granted thereafter have been paid upon a fixed basis. Also by 1927 amendment, the basis of the fixed retirement and widows' pensions became average salary received by the members over the three-year period immediately preceding retirement, rather than being related to the preceding one-year period only.

Defendant city has been and is presently paying pensions upon a fluctuating basis to all police and fire department members whose pensions matured prior to the 1925 amendment and to all widows upon whose pensions payment became due prior to the 1927 amendment. Members' pensions becoming due for initial payments subsequent to the 1925 amendment, and widows' pensions maturing for payments after the amendment of 1927 (even though the husband had retired previously), have been honored upon a fixed rather than a fluctuating basis. Meantime salaries attached to the positions involved have been increased from time to time, and plaintiffs claim the right to proportionately increased pension payments.

### Validity of the Amendments as Applied to These Plaintiffs

Plaintiffs first contend that under the principles enunciated by this court in *Allen* v. *City of Long Beach* (1955), 45 Cal. 2d 128 [287 P.2d 765], the trial court erred in determining that as to them the change from a fluctuating to a fixed pension was reasonable and therefore constitutional and valid. In that case defendant city attempted by charter amendment to substitute a fixed for the previously provided fluctuating pension, and it was held that as to employes whose employment had commenced while the fluctuating pension provisions were a part of the charter the alteration was unreasonable and invalid. We there declared that (p. 131 of 45 Cal. 2d) "An employee's vested contractual pension rights may be modified prior to retirement for the purpose of keeping a pension system flexible to permit adjustments *in accord with changing conditions and at the same time maintain the integrity of the system.* [Citations.] Such modifications must be reasonable, and it is *for the courts to determine upon the facts* of each case what constitutes a permissible change. To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes

in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. [Citations.] In the present case it appears that section 187.2 [the amendment] substantially decreases plaintiffs' pension rights without offering any commensurate advantages, and there is no evidence or claim that the changes enacted bear any material relation to the integrity or successful operation of the pension system established by section 187 of the charter . . .

" . . . [P. 132] Payment of a fixed [pension] amount freezes the benefit at a figure which is based on salary scales preceding retirement, thus the longer an employee is retired on a fixed pension the more likely it is that the amount of *his* pension will not accurately reflect existing economic conditions, whereas a retired employee receiving a fluctuating pension based on the salaries that active employees are currently receiving can maintain a fairly constant standard of living despite changes in our economy. We are at present in an era of rising salaries and high cost of living. . . . This court pointed out in *Casserly* v. *City of Oakland* [1936], 6 Cal.2d 64, 69 [56 P.2d 237], that a 'pension measured by the pay of officers of similar rank inures to the benefit of pensioners, when the value of money is low and the pay increased.' (*Cf. Terry* v. *City of Berkeley* [1953], 41 Cal.2d 698, 703 [263 P.2d 833], involving applicability of a similar charter amendment to persons already retired, where it was stated that the change from a fluctuating to a fixed pension was detrimental to pensioners.) It is, of course, impossible to predict with certainty whether, at the time of retirement of each of the employees here involved, the amount paid *him* under a provision for a fixed benefit would be greater or less than that paid *him* under a fluctuating benefit system, but that very uncertainty indicates the advantage of a plan for fluctuating benefits which attempts, however roughly, to reflect the actual purchasing power of the dollar. Under all the circumstances, it appears that *plaintiffs' rights* would be adversely affected by the change to the fixed benefit plan. . . .

"[P. 133] The city does not claim that any of the provisions contained in section 187.2 [amendment] was necessary to preserve or protect the pension program *applicable to persons employed before March 29, 1945* [i.e., *while fluctuating pensions were provided* by section 187 of the city charter], and there is no indication that the city would have difficulty in meeting its obligations *to those employees* under the provisions

of section 187.'' (Italics added.) (See also *Cochran* v. *City of Long Beach* (1956), 139 Cal.App.2d 282 [293 P.2d 839], reaching same result, in reliance upon the Allen case.)

Following the Allen case, it was held in *Chapin* v. *City Commission* (1957), 149 Cal.App.2d 40, 44-45 [307 P.2d 657], that a change made by the city of Fresno in the method of computing pension benefits, from a fluctuating amount equal to two-thirds of the salary currently attached to the rank held by the employe, to a limited maximum amount—a change made after the employment had commenced but prior to retirement—resulted in a substantial disadvantage and detriment *to him* which were not accompanied by comparable new advantages, and ''therefore constituted an attempted unreasonable, ineffective and illegal modification of *his* vested contractual rights.'' (Italics added.) (See also *Glaeser* v. *City of Berkeley* (1957), 148 Cal.App.2d 614 [307 P.2d 61].)

Despite the language of the above cases which clearly shows that it is advantage or disadvantage to the particular employes whose own contractual pension rights, already earned, are involved which are the criteria by which modifications to pension plans must be measured, defendants urge that new overall advantages or benefits gradually added to the city's pension system, including benefits added by amendment in January, 1923, as well as certain advantages added by amendments concurrent with or subsequent to those of 1925 and 1927, were sufficient to offset the disadvantage brought about by substituting a fixed for a fluctuating pension by the 1925 and 1927 amendments, and that such amendments therefore were properly held by the trial court to bear a material relation to the past and present integrity and successful operation of the pension system and to be reasonable.

In the first place, however, the member plaintiffs and the husbands of the widow plaintiffs rendered services to the city after January of 1923 and prior to the amendments of 1925 and 1927, and therefore under the holdings of the above cited cases had earned and vested rights in the retirement benefits already provided by the city charter during that period of time. (See also *Kern* v. *City of Long Beach* (1947), 29 Cal.2d 848, 851-852 [179 P.2d 799], and cases there cited.) It follows that advantages added prior to or during 1923 have no bearing upon the reasonableness of the detriments resulting from the 1925 and 1927 amendments. In this connection it is not to be forgotten that, as already mentioned, fluctuating pensions had been provided for more than 20

years prior to the 1925 and 1927 amendments by which fixed pensions were substituted.

In the second place, under the 1925 amendment substituting a fixed pension for police and fire department members, two other modifications were made: A member was made ineligible for a service-connected *disability* pension if eligible for a *service* pension (an apparent disadvantage), and the requirement was eliminated in case of a member who died in line of duty that his widow must have been married to him for one year. This latter modification, while undoubtedly an advantage for certain widows of members, cannot seriously be considered as commensurate to the detriments imposed, particularly by the change from a fluctuating to a fixed pension. And although the 1927 amendment changing widows' pensions from a fluctuating to a fixed basis also added certain benefits,[1]

---

[1]As summarized by defendants, the 1927 amendment (Stats. 1927, pp. 2020-2026) modified the pension benefits and burdens in the following respects:

(1) By changing the base for calculating a service pension from the salary attached to the rank held one year prior to the date of retirement to the average monthly rate of salary received during the three years immediately preceding that date;

(2) By providing, for members appointed subsequent to January 17, 1927, a service pension, for 25 years of service, of 50% of the average monthly rate of salary received during the three years immediately preceding the date of retirement plus an additional 1⅔% thereof for each additional year of service up to 66⅔% thereof but not in excess of $1,800.00 per year plus 1⅔% of such salary for each such additional year over 25 and less than 35;

(3) By changing the service-connected disability pension of ½ of the salary attached to the rank held at the date of retirement to a pension of not less than 10% nor more than 90% of such salary at such time;

(4) By eliminating the provision that a member who was eligible for a service pension was ineligible for a service-connected disability pension;

(5) By changing the widow's pension, in the case of a member who died after retirement upon a service pension, from ½ of the salary attached to the rank held one year prior to the date of retirement to ½ of the average monthly rate of salary received during the three years immediately preceding the date of retirement, plus 25% of such pension for one child under age 18, 40% for two such children and 50% for three or more such children;

(6) By changing the widow's pension, in the case of a member who died while eligible to a service pension, to the same extent and by the same additional percentages thereof as stated in (5) hereof;

(7) By changing the widow's pension, in the case of a member who died after retirement upon a service-connected disability pension, to the same extent and by the same additional percentages thereof as stated in (5) hereof;

(8) By changing the widow's pension, in the case of a member who died in line of duty, to the same extent and by the same additional percentages thereof as stated in (5) hereof;

(9) By increasing four pension benefits for children under 18 by continuing the payment to them of each of the pensions mentioned in (5),

they were limited in scope and the record does not show that any of the plaintiffs received any actual benefit. As pointed out by plaintiffs, the principal benefit was an increase in the fixed pension to be paid to the unmarried widow of a deceased member during the time that she had unmarried minor children under 18 years of age, and a credit for time spent by a member in the armed services in time of war toward the aggregate service required for a retirement pension. In the normal course of events these contingent benefits would result in an advantage to only a limited number of members—those who were young enough to have children under 18 following their death after a length-of-service retirement, or in the event of a service-connected death, or to those who had served in the armed forces during war. They clearly were not advantages which would offset (in an economy as predominantly inflationary as ours has been during the past half-century) the detriment resulting from the substitution of a fixed pension for a fluctuating one designed to keep future pension payments adjusted to current living costs. Moreover, as is disclosed by the changes summarized in footnote 1, various other detriments were imposed by the 1927 amendment which in themselves appear to have substantially cancelled, if not entirely offset, any contingent benefits resulting from the amendment. For example, that amendment required each member of the police and fire departments to contribute four per cent of his salary to the pension fund, whereas under the terms of the 1923 and 1925 charter provisions defendant city alone was required to appropriate and allocate to the pension fund from general taxes sufficient monies to defray the pension benefits provided by the charter. It is thus apparent that no net benefit was bestowed in 1925 or 1927 which is commensurate with the detriment imposed by the change from a fluctuating to a fixed pension.

In 1947 various benefits were added, most of which were specifically limited to members who were first employed subsequent to the effective date of the 1927 amendment and are therefore immaterial here. Any other net benefits resulting

(6), (7) and (8) hereof when payment thereof to the widow ceased upon her remarriage;

(10) By making a fixed pension of any pension thereafter granted to a widow, minor child or dependent parent;

(11) By giving a member new credit toward retirement by counting as a part of his aggregate service the time served by him, in time of war, in the United States Army, Navy, Marine Corps, or any division thereof;

(12) By providing for contributions by members of 4% of salary.

from the 1947 amendment[2] are, as in the case of the 1927 amendment, clearly insufficient to compensate for the change from a fluctuating to a fixed pension. █ The same may be said of the effect of section 17 of the city charter (effective April, 1941, and amended in 1945 and 1951, Stats. 1941, pp. 3407-3408, Stats. 1945, pp. 3019-3020, Stats. 1951, pp. 4396-4397) giving certain new retirement credits for service in the armed forces in time of war and granting to members in the armed forces the right to exercise, without first returning to city service, their accrued pension rights. █ And of course, contrary to defendants' contention, salary increases to members of the police and fire departments which became effective in 1926 could not compensate for the detriment flowing from the change to a fixed from a fluctuating pension, even though the monetary basis for calculation of the dollar amount of the pension was thereby increased by whichever of the two methods was used. The same is true of salary increases there-

---

[2]As summarized by defendants, the other changes made in 1947 were as follows (Stats. 1947, pp. 3679-3687):

1. By changing the base for calculating a service pension from the average monthly rate of salary received during the three years immediately preceding the date of retirement to the average monthly rate of salary assigned to the ranks held during such period;

2. By changing the service-connected disability pension from a range of from 10% to 90% to a range of from 50% to 90% of the salary attached to the rank held at the date of retirement;

3. By adding a new fixed pension, for a nonservice-connected disability after five years of service, of 40% of the highest salary attached to the rank of policeman or fireman at the date of retirement;

4. By changing the base for calculating a pension, in the case of a member who died after retirement upon a service pension or upon a service-connected disability pension or in line of duty, from the average monthly rate of salary received during the three years immediately preceding the date of the member's retirement or death to the average monthly rate of salary assigned to the ranks held by him during such period;

5. By, in the case of a member who, after five years of service, died in active service but not in line of duty or after retirement upon a nonservice-connected disability pension:

(a) Adding a new fixed pension of 40% of the highest salary attached to the rank of policeman or fireman at the date of his death;

(b) Making such pension payable to his widow, children, or dependent parents.

6. By increasing contributions by members from 4% to 6% of salary;

7. By giving a member new credit toward retirement for all the time upon which he was upon either a service-connected disability pension or a nonservice-connected disability pension upon his return to active service;

8. By eliminating certain classes of persons, other than firemen and policemen, from their former eligibility to the pension benefits provided for in said article XVII.

after granted. Thus, despite the plea of defendants that the city's policy has been one of continual expansion of pension benefits for all of its employes, it is plain that no new advantage has been granted to plaintiffs which would be substantially commensurate with the disadvantage resulting from the 1925 and 1927 amendments here under attack. ■ As made clear by the cases already cited, it is by advantage or disadvantage to the individual employes whose already earned and vested pension rights are involved that the validity of attempted changes in those rights depends, and benefits subsequently obtained by other employes cannot operate to offset detriments imposed on those whose pension rights have theretofore accrued.

■ In the Allen case the discussion of whether the substitution of a fixed for a fluctuating pension was permissible was specifically related to whether the rights of the particular plaintiffs would be affected adversely, and to whether the amendment was ''necessary to preserve or protect the pension program applicable to persons *employed before*'' (italics added) the effective date of the amendment. (*Allen* v. *City of Long Beach* (1955), *supra*, 45 Cal.2d 128, 133.) The same is true of the language used in *Chapin* v. *City Commission* (1957), *supra*, 149 Cal.App.2d 40, 44-45 [2] ; and *Glaeser* v. *City of Berkeley* (1957), *supra*, 148 Cal.App.2d 614, 616-617. Thus there is no merit in defendants' further contention that because the average as well as the cumulative total dollar amounts of pensions paid have greatly increased during the present *century* plaintiffs here should be content, and that ''It is of no importance in determining the reasonableness of the modifications complained of herein that appellants [plaintiffs], because of the position in which their respective ages and the uncertainties of life have placed them . . . may have been adversely affected thereby in view of the fact that . . . the members of the system as a whole, their widows, children and parents have been and still are being benefited tremendously.'' *Carey* v. *Retirement Board* (1955), 131 Cal.App.2d 739 [281 P.2d 25], is relied upon by defendants. The matter of reasonableness of the change in pension benefits which was there involved was not discussed. That case was decided before the Allen case and any implications in the former which are inconsistent with our decision in the latter must be deemed disapproved.

■ Defendants urge, nevertheless, that the change from

454

fluctuating to fixed pensions must be considered as of the dates made (in 1925 and 1927) and not in the light of present inflationary trends. In the Allen case (*Allen* v. *City of Long Beach* (1955), *supra*, 45 Cal.2d 128), however, none of the plaintiffs had yet retired and, as pointed out by the court (p. 132), it was therefore impossible to determine with certainty whether or not the change from a fluctuating to a fixed pension would actually result in the payment of a greater or a smaller pension following the retirement of any particular employe. The change was nevertheless held to be unreasonable because it would subject the employe to the hazards of future economic developments, an evil which the fluctuating pension was especially designed to avoid, rather than enabling him to "maintain a fairly constant standard of living despite changes in our economy" (p. 132 of 45 Cal.2d). And in *Glaeser* v. *City of Berkeley* (1957), *supra*, 148 Cal.App.2d 614, the same principle was followed and a similar result was reached. (See also *English* v. *City of Long Beach* (1954), 126 Cal.App.2d 414, 418 [2] [272 P.2d 875].) In the Glaeser case defendant city by 1944 amendments substituted a fixed fire and police pension for one that fluctuated upward with salary increases but not downward with decreases, and it was held, in reliance upon the Allen case, that the change did not apply to those who were in the city's employ at the time of the amendments. The city's argument that the amendments must be considered as of the time they were made, that "the common thinking of the time was that there would be widespread unemployment after the war, and an accompanying economic tapering off from the high wartime levels," whereas the Long Beach amendment involved in the Allen case was made in 1951 after the inflation spiral had started, was dismissed by the court as being "highly speculative. We find no basis for it in the record upon this appeal." (P. 617 of 148 Cal.App.2d.) Regardless of the "thinking of the time," however, under the holding of the Allen case the substitution of a fixed for a fluctuating pension is not permissible unless accompanied by commensurate benefits—benefits which are not shown to have been granted in the present case.

On behalf of plaintiff widows in the Abbott case, whose husbands had retired prior to the effective date of the 1927 amendment (by which widows' pensions were changed from a fluctuating to a fixed basis) but who died thereafter, it is argued that the 1927 amendment was not intended to apply to such widows. Inasmuch as the pension provisions for

widows and children which are in effect during the period of the husband's employment are considered to be an element of his contractual compensation and earned by him (see *Packer* v. *Board of Retirement* (1950), 35 Cal.2d 212, 215-216 [217 P.2d 660]; *English* v. *City of Long Beach* (1954), *supra*, 126 Cal.App.2d 414, 416-420; *Combs* v. *City of Long Beach* (1954), 126 Cal.App.2d 841 [272 P.2d 880]; *Malone* v. *City of Los Angeles* (1954), 126 Cal.App.2d 447, 451 [6] [272 P.2d 796]), it is apparent from what has already been said that such amendment cannot validly be applied to this group of widows any more than it can to those whose husbands retired after the 1927 amendment.

 Finally, as in the Allen case (p. 133 of 45 Cal.2d), there is no showing that the 1925 and 1927 amendments bear any material relation to the integrity or successful operation or to the preservation or protection of the pension program applicable to these plaintiffs. Defendants' only plea in this respect appears to be that if the amendments had not been made "the cost to the City and its taxpayers would have reached such staggering proportions that, in all probability, the system would have ceased to exist." This plea, based on speculation only, is without merit. Rising costs alone will not excuse the city from meeting its contractual obligations, the consideration for which has already been received by it. Moreover, it is not to be assumed that the city would have attempted to abolish its pension system by reason thereof, especially since such systems are almost universally essential in order to attract qualified employes to police and fire departments. As commented in *Kern* v. *City of Long Beach* (1947), *supra*, 29 Cal.2d 848, 856, "one of the primary objectives in providing pensions for government employees . . . is to induce competent persons to enter and remain in public employment." (See also *Packer* v. *Board of Retirement* (1950), *supra*, 35 Cal.2d 212, 217.)

 In summary as to this phase of the case, we conclude that the amendments of 1925 and 1927 are unreasonable and invalid as applied to these plaintiffs.

### The "Rule of Property" Theory

Included in the trial court's conclusions of law and judgments in these cases is the declaration "That the rights and duties of the deceased husband of each party plaintiff and of each party plaintiff and of the parties defendant, having reached the importance of a rule of property, are not to be dis-

turbed or impaired but are to remain as they have been fixed for many years.'' This determination appears to have been based upon ''findings of fact'' made in each case as set forth in the margin.[3]

A ''rule of property'' is defined as follows in Black's Law Dictionary, Fourth Edition: ''A settled rule or principle, resting usually on precedents or a course of decisions, regulating the ownership or devolution of property. *Yazoo & M. V. Railroad Company* v. *Adams* [1902], 81 Miss. 90 [32 So. 937]; *Brekke* v. *Crew* [1920], 43 S.D. 106 [178 N.W. 146, 154].'' The principle appears to be an extension of the ''*stare decisis*'' rule, which it is said ''seems to apply with peculiar force and strictness to decisions which have determined questions respecting real property and vested rights, although it embraces as well those matters of general commercial importance which tend to influence future business transactions. It has often been held that decisions long acquiesced in, which constitute rules of property or trade or upon which important rights are based, should not be disturbed, even though a different conclusion might have been reached if the question presented were an open one, inasmuch as uniformity and certainty in rules of property are often more important and desirable than technical correctness. Thus, judicial decisions affecting the business in-

---

[3] As summarized by plaintiffs the pertinent ''finding of fact'' embodies the following elements:

(1) That both plaintiffs and defendants accepted the validity and constitutionality of the amendments in question until on or about December of 1954, at which time each party plaintiff was advised that he or she may be entitled to a pension other than the one that he had been receiving since the date the pension was granted; (2) that the Supreme Court of this state and the District Court of Appeal determined ''during the period from 1930 to 1953 and in at least twelve separate actions, that the plaintiff in each such action, contrary to the contentions now made by the parties plaintiff herein, was entitled to only a fixed pension under the pension provisions of the Fire and Police Pension System;'' (3) that a determination at this late date that the provisions complained of were invalid and unconstitutional would result in the parties defendant having to pay a fluctuating pension instead of a fixed pension to each party plaintiff and to numerous other persons who were appointed to the Fire and Police Department prior to July 1, 1925, ''all of whom as of June 30, 1954, numbered almost 2700 persons, and would thereby result in an unconscionable burden being placed upon said parties defendant and the taxpayers of the City of Los Angeles''; and (4) that ''no compelling or cogent reasons have been advanced or proven to exist by the parties plaintiff upon which this court should permit such long-standing rights and duties to be disturbed, that such long-standing rights and duties have become so fixed for almost thirty years as to now constitute a rule of property and that such rights and duties are entitled to be protected against impairment.''

terests of the country should not be disturbed except for the most cogent reasons, as where the evils of the principle laid down will be more injurious to the community than can possibly result from a change, or upon the clearest grounds of error." (14 Am.Jur. 286, § 65; *id.* p. 343, § 126.) And in 21 Corpus Juris Secundum 396-400, section 216, it is stated that "Where judicial decisions may be fairly presumed to have entered into the business transactions of a country, and have become established as rules of property, it is the duty of the court, on the principle of stare decisis, to adhere to such decisions without regard to how it might be inclined to decide if the question were new." The same principle is applied in California to avoid injustice which would result from the overruling of a judicial decision upon which parties have relied in investing money or acquiring property interests. (See *County of Los Angeles* v. *Southern Calif. Tel. Co.* (1948), 32 Cal.2d 378, 392-393 [196 P.2d 773]; *Sorensen* v. *Hall* (1934), 219 Cal. 680, 683 [28 P.2d 667]; *Bank of Italy* v. *Bentley* (1933), 217 Cal. 644, 655 [20 P.2d 940]; *Sacramento Bank* v. *Alcorn* (1898), 121 Cal. 379, 382 [53 P. 813]; 13 Cal.Jur.2d 648-651.)

In the present case, however, there appear to be neither guiding judicial decisions nor reliance thereon by the city in adopting the amendments here under attack. The fact that the city failed to pay to these plaintiffs a fluctuating rather than a fixed pension obviously does not constitute reliance by it upon anything except its own charter provisions in failing to live up to its obligations to plaintiffs, obligations in return for which, as already mentioned, it has received the full contractual consideration from its employes. It has neither invested money nor acquired any property interests which would be jeopardized by holding it liable for the fluctuating pensions which the employes earned.

Defendants refer to what they designate as a "long line of cases adjudicated through the years, in which members of this pension system (or widows of such members) who were appointed prior to July 1, 1925 and retired or died thereafter, sought payment of pensions."[4] However, not only was the

---

[4]Defendants cite the following cases: *Skaggs* v. *City of Los Angeles* (1954), 43 Cal.2d 497 [275 P.2d 9]; *Dierkes* v. *City of Los Angeles* (1945), 25 Cal.2d 938 [156 P.2d 741]; *Knoll* v. *City of Los Angeles* (1942), 21 Cal.2d 396 [132 P.2d 203]; *McKeag* v. *Board of Pension Commrs.* (1942), 21 Cal.2d 386 [132 P.2d 198]; *Haas* v. *City of Los Angeles* (1942), 21 Cal.2d 393 [132 P.2d 201]; *Dillard* v. *City of Los Angeles* (1942), 20 Cal.2d 599 [127 P.2d 917]; *Dryden* v. *Board of Pen-*

earliest of such cases not finally decided until 1933, but in none of them was the issue of the reasonableness and constitutionality of the change from fluctuating to fixed pension discussed or considered. Although there is language in *Rustad* v. *City of Long Beach* (1953), 122 Cal.App.2d 106 [264 P.2d 955], and *Carey* v. *Retirement Board* (1955), *supra,* 131 Cal. App.2d 739, 746 [6], which suggests that such a change might be upheld, those cases were decided within the last five years and are controlled by the later case of *Allen* v. *City of Long Beach* (1955), *supra,* 45 Cal.2d 128, in which the invalidity of the change was unequivocally established. It is therefore obvious that defendants have not relied upon any ''long line of cases'' in either adopting the charter amendments here under attack, in failing to pay fluctuating rather than fixed pensions to plaintiffs, or in adding to its pension system certain benefits subsequent to the amendments of 1925 and 1927—benefits in which for the most part, as already noted, these plaintiffs were not eligible to participate and which were partially, if not largely, offset by the contributions of 4 per cent (later increased to 6 per cent) of salary exacted from the employes. And, contrary to what defendants seemingly intend to suggest, certainly the city has not acquired any ''vested property and contract rights,'' to be protected by the courts, through its own failure to live up to its contractual obligations to plaintiffs.

It follows that defendants' reliance upon the ''rule of property'' theory to sustain their refusal to pay fluctuating pensions to plaintiffs is untenable and cannot be upheld.

### The Defense of Laches

As already noted, in each of these five cases plaintiffs seek by the first cause of action a declaratory judgment ruling invalid the change from a fluctuating to a fixed pension, and by the second cause of action a money judgment for the difference between accruals under the two systems for the three-year period prior to the date claims therefor were filed with defendants. Defendants as one of their defenses allege among other things ''that plaintiffs and each of them have been guilty of laches and unreasonable delay in bringing both [causes of action] . . . and that both . . . are barred.'' The trial court

---

*sion Commrs.* (1936), 6 Cal.2d 575 [59 P.2d 104]; *Hermanson* v. *Board of Pension Commrs.* (1933), 219 Cal. 62 [28 P.2d 21]; *Stamper* v. *City of Los Angeles* (1947), 80 Cal.App.2d 242 [181 P.2d 687]; *Cordell* v. *City of Los Angeles* (1944), 67 Cal.App.2d 257 [154 P.2d 31]; *Jenkins* v. *City of Los Angeles* (1943), 60 Cal.App.2d 50 [140 P.2d 45]; *Faber* v. *Board of Pension Commrs.* (1943), 56 Cal.App.2d 825 [133 P.2d 404].

found that "the allegations contained in [the above defense] . . . are true and correct and, in addition thereto and in connection therewith, it is also true . . . that, on at least four different occasions subsequent to the amendments to the pension provisions therein complained of by the parties plaintiff, the position of the parties defendant was changed with relation to the members and the other beneficiaries of the Fire and Police Pension System in that new and additional pension benefits were provided for such members and for such other beneficiaries and new and additional duties and burdens in connection therewith were placed upon the parties defendant and the taxpayers of the City of Los Angeles." Also included in both the "conclusions of law" and the judgments is the declaration "That both causes of action of each party plaintiff are barred by laches."

Plaintiffs contend (1) that the evidence does not support the defense of laches, and (2) that in any event their second causes of action, for money judgments, constitute actions at law and therefore are not subject to the equitable defense of laches.

As commented in *Gibson* v. *Mitchell* (1937), 9 Cal. 2d 718, 725-726 [5] [72 P.2d 740], "Laches is dependent not only upon delay, but also upon injury occasioned by the delay." (See also *Estate of Harootenian* (1951), 38 Cal.2d 242, 247 [5] [238 P.2d 992]; *Phoenix Mutual L. Ins. Co.* v. *Birkelund* (1946), 29 Cal.2d 352, 363 [4] [175 P.2d 5]; *Allen* v. *California Mutual B. & L. Assn.* (1943), 22 Cal.2d 474, 488 [13] [139 P.2d 321]; *Brownrigg* v. *deFrees* (1925), 196 Cal. 534, 538-539 [1] [238 P. 714]; *Kirkpatrick* v. *Tapo Oil Co.* (1956), 144 Cal.App.2d 404, 412 [7, 8] [301 P.2d 274]; *Wilkerson* v. *Thomas* (1953), 121 Cal.App.2d 479, 490 [18] [263 P.2d 678].) Although the charter amendments here under attack were adopted in 1925 and 1927, and some of the plaintiffs have been receiving pensions for many years, others were retired or widowed only recently. These cases were filed in 1955. Thus the same period of delay is not chargeable to all plaintiffs. It further appears that no injury is shown to have been occasioned to defendant city and that the defense of laches is therefore not supported. In this connection it is also noted that injury is neither specifically pleaded by defendants nor found by the trial court. Although the court did find that subsequent to the amendments the position of defendants "was changed . . . in that new and additional pension bene-

fits were provided . . . and new and additional duties and burdens . . . placed upon the parties defendant and the tax-payers of the City,'' there is neither allegation, showing nor finding that such benefits or burdens were induced by reason of the failure of any of these plaintiffs to claim fluctuating rather than fixed pensions.

In the first place, there were no salary increases in the fire or police departments from 1926 until 1943, and thus no occasion for any claim for a fluctuating pension by those whose pensions matured in the interim.[5] Until a salary change occurred and a pension was thereafter granted there would be no way of knowing whether the city's pension obligations would be greater or less dollarwise by payment on a fixed rather than a fluctuating basis; if deflation rather than inflation had set in and salaries had dropped, then the fixed pension, conceivably, could have been more costly to the city than the fluctuating.

In the second place, defendant city instead of sustaining injury by reason of delay upon the part of any plaintiff in claiming a fluctuating rather than fixed pension has actually gained to the extent that any past due payments have become barred either by the three-year statute of limitations which applies to statutory obligations (see Code Civ. Proc., §§ 338, subd. 1; 312; *Skaggs* v. *City of Los Angeles* (1954), *supra*, 43 Cal.2d 497, 500; see also *Santa Cruz County* v. *McKnight* (1918), 20 Ariz. 103 [177 P. 256, 258 [8]]) or by the six-months' claim provision of section 376 of the city charter, hereinafter discussed.

The further suggestion that if plaintiffs had earlier claimed a fluctuating rather than a fixed pension defendant city might not have extended pension benefits to many employes not previously included in any existing retirement system (as it did by charter amendment in 1937, Stats. 1937, p. 2943), might not have added the post 1925 and 1927 pension benefits to the police and fire pension system which have been discussed hereinabove, and might not have increased the salaries paid to members of the departments, is likewise without merit; it is based on speculation and finds no substantial support in the evidence. The fact that, as already noted, no salary changes had occurred for some 10 years

---

[5]All of the plaintiffs in the Abney and Behrns cases (with one possible exception) and the husbands of all plaintiffs in the other three cases retired after the effective date of the 1926 salary increase.

prior to adoption of the 1937 charter amendment shows that at that time it was impossible to determine whether the city's future obligation to most of the present plaintiffs would have been greater or less dollarwise by payment of a fluctuating rather than fixed pension to them, and clearly indicates that plaintiffs' failure to earlier claim the fluctuating payments had no bearing upon the adoption by the electorate of the 1937 amendment extending pension benefits to additional city employes. Further, as likewise already noted, "one of the primary purposes of offering a pension, as additional compensation, is to induce competent persons to enter and remain in public service." (*Packer* v. *Board of Retirement* (1950), *supra*, 35 Cal.2d 212, 215; *Kern* v. *City of Long Beach* (1947), *supra*, 29 Cal.2d 848, 856.) It thus appears clear that the 1937 inclusion of additional employes in pension systems, as well as the addition of further benefits to the fire and police pension system, was induced by the necessity of attracting and holding competent employes, rather than by any reliance upon the failure of these plaintiffs to earlier assert a right to a fluctuating pension. The same may be said of salary increases extended to fire and police department members in 1926, 1943, and later years. Further, many of the salary ordinances themselves expressly recited that the purpose of the increase was to keep salaries adjusted to the current increase in the cost of living. Also, under the terms of section 425 of the city charter, the city council had the duty to "provide a salary or wage at least equal to the prevailing salary or wage for the same quality of service rendered to private persons, firms or corporations under similar employment" (Stats. 1925, p. 1150), thus establishing that in the current inflationary era of rising salaries, the increases provided by defendant city were at least largely granted by reason of its own 1925 charter provisions, rather than being induced by these plaintiffs' failure to act. In summary, no prejudice or injury to defendants has been shown, and hence one of the elements of the defense of laches is lacking.

 Plaintiffs are likewise correct in their contention that their second causes of action, for money judgments, constitute actions at law and therefore are not subject to the equitable defense of laches. It is provided in section 592 of the Code of Civil Procedure that "In actions . . . for money claimed as due upon contract, or as damages for breach

462

of contract, . . . an issue of fact must be tried by a jury, unless a jury trial is waived . . ." This section was framed with a view of adopting the principle that the constitutional guaranty of the right to jury trial applies only to common law actions and not to suits in equity. (See *Vallejo etc. R.R. Co.* v. *Reed Orchard Co.* (1915), 169 Cal. 545, 556 [147 P. 238]; 29 Cal.Jur.2d 482-485, and cases there cited; 18 Cal. Jur.2d 140-141; 1 Cal.Jur.2d 620-622.) ▆▆▆ Inasmuch as the second causes of action seek to recover money due as the vested contractual right of plaintiffs (see *Allen* v. *City of Long Beach* (1955), *supra*, 45 Cal.2d 128, 131 [1], and cases there cited), it is clear that such causes are actions at law rather than in equity. (See also *Philpott* v. *Superior Court* (1934), 1 Cal.2d 512 [36 P.2d 635, 95 A.L.R. 990]; *Brownrigg* v. *deFrees* (1925), *supra*, 196 Cal. 534, 539 [2].) ▆▆▆ The fact that both equitable (declaratory judgment) and legal (money judgment based on contract) relief are requested in the same action does not, for example, deprive plaintiff of a right to a jury trial on the legal issues or render all issues and relief sought equitable in nature. (*Robinson* v. *Puls* (1946), 28 Cal.2d 664, 665-666 [1] [171 P.2d 430].) ▆▆▆ Inasmuch as laches is not available as a defense to an action at law (*Mandracio* v. *Bartenders Union, Local 41* (1953), 41 Cal.2d 81, 85 [3] [256 P.2d 927]) even though combined with the cumulative remedy of declaratory relief (see Code Civ. Proc., § 1062; *Weber* v. *Marine Cooks' & Stewards' Assn.* (1954), 123 Cal.App.2d 328, 332 [266 P.2d 801]), it follows that it is not available to defendants here as a defense to the causes of action seeking money judgments.

### The Statute of Limitations

The trial court found and determined that both causes of action of each of the plaintiffs are barred by the three-year statute of limitations specified by section 312 and subdivision 1 of section 338 of the Code of Civil Procedure (see *Skaggs* v. *City of Los Angeles* (1954), *supra*, 43 Cal.2d 497, 500).

▆▆▆ As noted in *Dillon* v. *Board of Pension Commrs.* (1941), 18 Cal.2d 427, 430 [2] [116 P.2d 37, 136 A.L.R. 800], "The right to receive periodic payments under a pension is a continuing one (see *Dryden* v. *Board of Pension Commrs.* [1936], 6 Cal.2d 575 [59 P.2d 104]), and any time limitation upon the right to sue for each instalment necessarily commences to run from the time when that instalment actually falls due." Defendants urge, however, that plaintiffs or the

deceased husbands of the widow plaintiffs could have sought declaratory relief with respect to the 1925 and 1927 charter amendments at the times those amendments became effective, or at least at the times the fixed rather than fluctuating pension payments were subsequently commenced, that the three-year statute of limitations applies to such relief, and that therefore both the causes of action for declaratory relief as well as those for money judgments are barred because when these actions were filed more than three years had passed since declaratory relief could have been sought.[6]

As indicated in *Martin* v. *Henderson* (1953), 40 Cal. 2d 583, 593 [11] [255 P.2d 416], the rule is, however, that the availability of an action for declaratory relief in no way affects the period of limitations commencing upon the breach of an obligation to pay money. Neither is the right to declaratory relief with respect to the obligation to make the payments which fall within the limitations period barred. As declared in *Maguire* v. *Hibernia S. & L. Soc.* (1944), 23 Cal.2d 719, 734 [14, 15] [146 P.2d 673, 151 A.L.R. 1062], and relied upon in the Martin case, "We are of the opinion that the period of limitations applicable to ordinary actions at law and suits in equity should be applied in like manner to actions for declaratory relief. Thus, if declaratory relief is sought with reference to an obligation which has been breached and the right to commence an action for 'coercive' relief upon the cause of action arising therefrom is barred by the statute, the right to declaratory relief is likewise barred. On the other hand, if declaratory relief is sought 'before there has been a breach of the obligation in respect to which said declaration is sought,' or within the statutory period after the breach, the right to such relief is not barred by lapse of time."

Here, as we have seen, the statutory time limitation upon the right to sue for each pension instalment commences to run from the time when that instalment falls due. It follows that even though plaintiffs might have earlier brought suit for declaratory relief similar to that filed by the active members of the Long Beach Police and Fire Departments in the Allen case (*Allen* v. *City of Long Beach* (1955), *supra*, 45 Cal.2d 128), their failure to do so does not operate to bar their right to declaratory relief with respect to future pension payments as well as to a monetary judgment for the difference,

---

[6]Although not material in view of our determination, it appears that the husbands of certain of the widow plaintiffs died within less than three years before filing of the complaints.

for three years (insofar as the subject statute is concerned) prior to the filing of these actions, between the amount of the fixed and the fluctuating pensions. (See also *Fry* v. *Board of Education* (1941), 17 Cal.2d 753, 755, 761 [9] [112 P.2d 229], where in mandamus actions recovery of back salary was allowed for the three-year period before actions commenced.) Cases relied upon by defendants involve either determinations as to the plaintiff's *status* as a pensioner or right to a pension (*Dillon* v. *Board of Pension Commrs.* (1941), *supra,* 18 Cal.2d 427, 430 [2]; *Hermanson* v. *Board of Pension Commrs.* (1933), *supra,* 219 Cal. 622; *Carey* v. *Retirement Board* (1955), *supra,* 131 Cal.App.2d 739, 747 [3c]), or the right to occupy a particular position as an employe (*Leahey* v. *Department of Water & Power* (1946), 76 Cal.App.2d 281, 284 [173 P.2d 69]), and are not controlling or persuasive here.

### *Six-Months' Claim Provision of City Charter*

 Defendants further urge that under the claim provisions of section 376 of the city charter any recovery by plaintiffs for past due pension payments must be limited to those which accrued within six months prior to the times plaintiffs presented claims therefor. This point is meritorious.

Shortly before bringing these actions, plaintiffs did present claims for the sums they seek as the difference between the amounts accrued on the fluctuating basis and the sums which had been paid on the fixed basis, apparently computed to cover the three-year period prior to presentation of the claims. Section 376 of the charter requires that all claims against the city other than for damages "shall be presented within six (6) months after the last item of the account or claim accrued." (Stats. 1927, p. 2014.) In *Dillon* v. *Board of Pension Commrs.* (1941), *supra,* 18 Cal.2d 427, 431-432 [7] (referring to *Dryden* v. *Board of Pension Commrs.* (1936), *supra,* 6 Cal.2d 575) this court declared, "With regard to pensions, the court interpreted the provision [section 376] as meaning that a claim could be made to the board within six months after the time when any given payments would have accrued had the right to a pension been established. Thus, a claimant can assert his right to a pension before the board at any time after the event giving rise to the claim has occurred so long as the claim is made within six months after any payment would have accrued. If the pension is granted he is entitled to receive payments in the future but can recover only those past payments which would have accrued within a period six

months prior to the time of the making of the claim." In the Dryden case, *supra*, the court was considering the pension claim of the widow of a Los Angeles police officer. Her claim had been filed some ten months after the death of her husband. The court held (pp. 580-581 of 6 Cal.2d), "The right to pension payments *is a continuing right*. Petitioner by her conduct may have barred herself from collecting payments which have accrued [more than six months prior to filing of the claim], but this does not mean that she is without means to enforce the right to *present* and *future* pension payments . . . [p. 582] 'It is our opinion that the petitioner is entitled to all those periodic pension payments which fell due within a period of six months prior to her application . . ., and to all those periodic pension payments which have accrued since that date and which will continue to accrue in the future under the provisions of section 183 of the charter.' "

From the foregoing discussion it appears that plaintiffs, in addition to payments which have accrued since their claims have been filed, and which will in the future come due, may likewise recover only those past due payments which accrued within six months prior to the times they presented claims therefor. *Skidmore* v. *County of Alameda* (1939), 13 Cal.2d 534, 538, 540 [90 P.2d 577], relied upon by plaintiffs, is not controlling here. It does not concern a claim for past due pension payments. In its closest similarity to the case at bar it states merely that (p. 540), "There is no language in the statute [Pol. Code, § 4075 as then constituted, now Gov. Code, § 29702] to express the intent that varying amounts which became due to the claimant for the performance of specified services under an express contract should be treated as separate claims, rather than as the items of one claim," and that (p. 539) "the items set forth in the plaintiffs' claim" (sales of land by the county based on investigations made and reports furnished by plaintiffs) "may be deemed to constitute an 'account or claim' within said section 4075." *Skidmore* v. *County of Tuolumne* (1939), 35 Cal.App.2d 525, 528-529 [1] [96 P.2d 178] relates to a cause of action similar to that involved in *Skidmore* v. *County of Alameda, supra.* In *Nelson* v. *Merced County* (1898), 122 Cal. 644 [55 P. 421], the nature of the claim of the plaintiff supervisor for a per diem allowance (as being a proper subject for an account) was held to be controlled by Statutes of 1893, page 365, "All claims against the county by members of the Board of Supervisors for

per diem and mileage, or other service rendered by them, must be itemized and verified as other claims . . ."

Plaintiffs also contend that their various applications for retirement[7] made at or about the time their right to a pensionable status was recognized by the board constituted a sufficient compliance with section 376 under the specific holding of this court in *Skaggs* v. *City of Los Angeles* (1954), *supra,* 43 Cal.2d 497, 504-505 [6], which in turn relied upon the Dryden and the Dillon cases. The Skaggs case, however, involved status or right to any pension at all, and we believe the better view, and one in harmony with the purpose of limitations provisions is that where, as in these cases, status as a pensioner is established, then the pensioner who asserts a right to larger payments than those received must put the defendants upon notice by presentation of a claim to that specific effect.

### Interest on Unpaid Balances Due Plaintiffs

In September, 1955, subsequent to the commencement of these actions, section 3287 of the Civil Code was amended to read as follows: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt. *This section is applicable to recovery of damages and interest from any such debtor, including any political subdivision of the State.*" (The italicized portion was added in 1955; Stats. 1955, ch. 1477, § 1.)

Prior to the 1955 amendment the rule was that municipal corporations were not liable for interest in the absence of express statutory provision. (*Los Angeles Dredging Co.* v. *Long Beach* (1930) 210 Cal. 348, 362 [291 P. 839, 71 A.L.R. 161]; *Imperiale* v. *City & County of San Francisco* (1954), 128 Cal.

---

[7]It appears that the original application for retirement of each member consisted of a letter in which a general request for retirement from active service as of a given date was made, coupled with a recitation of the date of appointment, the aggregate period of service and the rank then held by the applicant. Thereafter the applicants signed printed application forms provided and prepared by defendants, which contained a request for retirement under the provisions of section 181 of the city charter, and payment of a pension. Certain of the forms refer to payment of ''a pension equal to of the average monthly rate of salary . . . received,'' while others request payment of ''a pension equal to . . . . . . of the annual salary attached to the rank or position held by your petitioner one year prior to this date of retirement.''

App.2d 277, 282-283 [2] [275 P.2d 569].) Defendants do not dispute that pending cases should be determined in accordance with the amendment if it is otherwise applicable, thus authorizing interest (on past due claims) from its effective date (see *Gregory* v. *State* (1948), 32 Cal.2d 700, 702-703 [197 P.2d 728, 4 A.L.R.2d 924]), but contend that a municipality is not a "political subdivision of the State" within the meaning of section 3287. In *County of San Mateo* v. *Coburn* (1900), 130 Cal. 631, 636 [63 P. 78, 621], it is declared that "A county is a governmental agency or political subdivision of the state, organized for purposes of exercising some functions of the state government, whereas a municipal corporation is an incorporation of the inhabitants of a specified region for purposes of local government." This view was relied upon and reiterated in *Otis* v. *City of Los Angeles* (1942), 52 Cal. App.2d 605, 611-612 [126 P.2d 954], wherein it was decided that actions for declaratory relief under section 1060 of the Code of Civil Procedure may be maintained against municipal corporations. In so deciding the court expressly recognized that it had been held in *Bayshore Sanitary Dist.* v. *County of San Mateo* (1941), 48 Cal.App.2d 337 [119 P.2d 752], and *Irvine* v. *Sacramento etc. Drainage Dist.* (1942), 49 Cal.App. 2d 707 [122 P.2d 320], that section 1060 of the Code of Civil Procedure does not authorize the bringing of an action for declaratory relief against the state or its political subdivision, but declared (p. 611 of 52 Cal.App.2d) that "respondents' contention that the legal status of a municipal corporation is akin to that of a county cannot be sustained either upon reason or authority."

It is thus apparent that the interest provisions of section 3287 are not applicable to municipal corporations. *People* v. *Hallner* (1954), 43 Cal.2d 715 [277 P.2d 393], relied upon by plaintiffs, in which the expression "executive officer *of* this state" (italics added) as used in section 67 of the Penal Code relating to bribery, was construed as having the geographic meaning of "*in* this state," rested upon the principle that the section had previously been construed to the same effect, that the Legislature had thereafter considered the subject of bribery of public officers and made a number of statutory changes, but had not amended the section. The same principle applied in the present case indicates that in amending section 3287 in 1955 the Legislature was aware of the decisions in the County of San Mateo and Otis cases, *supra,* and approved of the judicial construction excluding municipal corporations

from the concept of ''political subdivisions of the State.''
Plaintiffs suggest, however, that the purpose of amending the
section was ''to remedy the inequitable situation which was
brought to light by the opinion'' in the case of *Imperiale* v.
*City & County of San Francisco* (1954), *supra*, 128 Cal.App.
2d 277, 282-283 [2]. If the amendment were intended by the
Legislature to apply to municipal corporations as well as to
the state's political subdivisions it would have been easy to use
specific language so declaring. In the absence thereof, we con-
clude that the section does not authorize interest against
municipal corporations, and that its recovery in the present
cases must be denied.

### Concerning Instructions on Remand

Certain stipulations were entered into between the parties
from which, plaintiffs assert, the amounts due each plaintiff as
of the date of trial may be computed in case plaintiffs are held
entitled to a fluctuating pension. Relying on such stipulations,
plaintiffs request that the judgments be reversed with instruc-
tions to the trial court to compute the respective amounts due
each plaintiff and enter judgments accordingly. It is difficult
to determine, however, whether the stipulations are sufficiently
specific to permit exact and complete computations by the trial
court, and we are of the view that under the circumstances it
is more appropriate to direct that court to make the essential
computations and enter judgments if it finds that it can do
so upon the present record, and, if not,then to take such further
evidence as may be necessary to compute the amounts due and
thereupon to enter judgments not inconsistent with the con-
clusions announced in our opinion.

The judgments are reversed with directions to the trial court
to enter judgments in favor of plaintiffs in accordance with the
conclusions declared in the foregoing opinion, if the court finds
that it can do so upon the present record, and, if not, then the
court is directed to take such further evidence as may be
necessary to compute the amounts due to each plaintiff, to
make such computations, and thereupon to enter judgments
accordingly.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence,
J., and McComb, J., concurred.

Respondents' petition for a rehearing was denied July 2,
1958.