[Civ. No. 21484. Second Dist., Div. Three. Sept. 12, 1956.]

SARAH ARNOLD KIRKPATRICK et al., Appellants, v. TAPO OIL COMPANY (a Corporation) et al., Defendants; BARRETT CONGER, as Administrator With the Will Annexed, etc., et al., Respondents.

406

Chandler, Wright, Tyler & Ward and Don F. Tyler for Appellants.

Harold A. Ritchie for Respondents.

VALLÉE, J.—Appeal by plaintiffs from an adverse judgment in an action to replace lost stock certificates for 5,000 shares of stock of defendant Tapo Oil Company, a California corporation, brought pursuant to section 2482 et seq. of the Corporations Code.[1] The cause went to trial on the amended complaint of plaintiffs, called the "Stewart heirs," the answer and cross-complaint of defendants other than Tapo Oil Company, called the "Conger heirs," and the answer of plaintiffs to the cross-complaint. Tapo appeared as a stakeholder. Each side sought to have new certificates of stock issued to them in place of the admittedly lost certificates.

---

[1]Corporations Code, section 2482: "Whenever a certificate for shares issued by a domestic corporation or by a foreign corporation maintaining an office or agency for the transfer of shares in this State has been lost or destroyed, the owner thereof may bring an action in the superior court of the county in which the principal office of the corporation is located against the corporation and all known claimants, for the purpose of obtaining a new certificate."

By stipulation two defenses were added to the answer of the Conger heirs: the statute of limitations and laches; and three defenses were added to plaintiffs' answer to the cross-complaint: the statute of limitations, laches, and the statute of frauds.

No witnesses were called at the trial. The parties stipulated to these facts:

On May 15, 1900, W. L. Stewart purchased 5,000 shares of the stock of Tapo Oil Company, represented by certificates numbers 138, 139, 140, 141, and 142, for 1,000 shares each. The shares were registered in his name on the share register of the corporation and are still so recorded. On December 4, 1912, Stewart wrote the following letter to Tapo, the authenticity and delivery of which is admitted:

"UNION OIL COMPANY OF CALIFORNIA
 UNION OIL BUILDING
 LOS ANGELES, CALIFORNIA

"W. L. Stewart
 First Vice President
 Manager Executive & Field Depts

 "December 4th, 1912
"Tapo Oil Company
 Santa Paula, Cal.

"Gentlemen:

"This is to notify you that I hereby relinquish all my right, title and interest in and to 5,000 shares of the capital stock of the Tapo Oil Company, evidenced by certificates Nos. 138, 139, 140, 141 and 142, for 1,000 shares each, standing in my name on the stock books of the Tapo Oil Company.

"In explanation of the above, would say that a number of years ago I sold 5,000 shares of stock in your company to Mr. E. L. Conger, and he now informs me that he never received the certificates covering the same, and as I have no shares in this Company at present, and have had none since I made sale to Mr. Conger, it is my belief that the shares standing in my name properly belong to Mr. E. L. Conger, and it will be quite satisfactory to me, as far as my interest in the shares is concerned, to have you re-issue them to Mr. Conger.

 "Yours very truly,
 (S) W. L. STEWART"

The letter forms a part of Tapo's share records.

W. L. Stewart died on June 21, 1930. His estate was probated in Los Angeles County but neither the inventory nor the decree of distribution referred to the certificates in question. E. L. Conger died in 1914. His estate was probated in Los Angeles County but neither the inventory nor the decree of distribution referred to the certificates. Plaintiffs are the descendants of and the successors in interest of W. L. Stewart. Defendants, other than Tapo, are the descendants of and the successors in interest of E. L. Conger. All parties had made diligent search for the certificates and they had not been found and were lost. No shares of stock are registered in the name of Conger on Tapo's books. The only certificates registered in the name of Stewart are the ones specified in the pleadings. The value of the shares of stock at any purchase, sale or assignment, which may have been made, was in excess of the then applicable statute of frauds. No documents which are material to the action are known to exist other than the letter of December 4, 1912, and the account book to be referred to.

Counsel for the Conger heirs then offered in evidence an account book kept by E. L. Conger in his lifetime.[2] The book is a ledger. It contains a number of pages referring to shares of stock in various corporations. On the upper half of page 175 is the account of Uncle Sam Oil Company. Three lines lower on the debit side of the ledger, in the column describing the shares, appear in ink the words "Tapo Oil Stock" and in pencil on the next line below it in the column used for showing amounts paid, "$1,000." Four lines lower is the notation: "East Whittier Oil Stock." The lower half of the page is the account of Columbia Oil Company. The entries for Uncle Sam Oil Company and Columbia Oil Company begin in the year 1900. The last entry made relative to Uncle Sam was on March 20, 1900.

On the alphabetic index page lettered "N" and "O" of the ledger is found:

---

[2]Counsel for the Conger heirs characterized the ledger thus: "This is a record that commences in the year 1886, I think, and carries about every transaction that a man could have made at that time with respect to the operation of his home and his business. The defendants' predecessor in title was a minister of the Universalist Church. I think he was rather well known in this community. He shows here when he bought gas, when he bought grain for his chickens, and he shows what he paid for them."

"Oil Stock. Central Co. ............... 167.-123.
" " Uncle Sam ................... 175.
" " Park. Crude Oil Co. .......... 173.
" " Columbia ................... 175
" " United Petroleum Co. ......... 176.
" " Taho. ....................... 175.
" " East Whittier ............... 175

Omaha Water Bond. Page 180.''

The first notation made relative to Omaha Water Bond was on July 10, 1908. The ledger was carefully and well kept, even the number of eggs laid by chickens on respective days was noted.

Plaintiffs' counsel stipulated the ledger was found among the effects of E. L. Conger; it was kept in Conger's handwriting; and the particular entry "Tapo Oil Stock $1000." was in his handwriting. He did not stipulate that it was under the date 1900 or that it was made on that or any other date.

Defendants offered the ledger in evidence as an ancient document. Over plaintiffs' objection it was admitted.

The court found: the ledger was and is an ancient document kept in the handwriting of Conger and "the entry therein 'Tapo Oil Co. $1000' was and is an entry made in the handwriting of said deceased E. L. Conger, and that said entry was and is a record referring to his purchase of said aforementioned certificates for stock of the Tapo Oil Company for the total sum of One Thousand Dollars ($1000.00).''

The court concluded the letter of December 4, 1912, was on the date of its delivery to Tapo "a sale, transfer and assignment of all the right, title and interest" that W. L. Stewart had or ever has had in and to the certificates to Conger; the action is brought pursuant to section 2482 et seq. of the Corporations Code and Tapo was by virtue of the letter authorized and directed by Stewart to issue and cause to be delivered to Conger certificates for 5,000 shares of its stock as the property of Conger. No finding of fact or conclusion of law was made on the issue of the statute of limitations or laches. A finding against such issues is implicit in the court's conclusion with respect to the letter of December 4, 1912.

The court decreed the Conger heirs are the owners of the 5,000 shares of stock; ordered Tapo to cancel certificates 138 to 142 inclusive and to issue new certificates to the Conger heirs; and ordered them to deliver to the court a bond for $5,000 to indemnify Tapo against loss or liability, pursuant to section 2485 of the Corporations Code.

Plaintiffs' points are: 1. The cross-action is barred by laches. 2. The cross-action is barred by the three-year or, at most, the four-year statute of limitations. 3. The conclusion that the Stewart letter of December 4, 1912, was an enforceable contract of sale violates the statute of frauds. 4. The court erred in admitting the ledger as an ancient document.

■■ We first consider whether the court erred in admitting the ledger in evidence as an ancient document. Code of Civil Procedure, section 1963, provides:

"All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind: . . .

"34. That a document or writing more than 30 years old is genuine, when the same has been since generally acted upon as genuine, by persons having an interest in the question, and its custody has been satisfactorily explained."

Plaintiffs concede it was shown the ledger was more than 30 years old and that it was in the handwriting of E. L. Conger. These concessions and their stipulation that it was found among Conger's effects carry with them the inference that it is genuine. They argue a proper foundation was not laid for its reception in evidence in that it was not shown it "has been since generally acted upon as genuine, by persons having an interest in the question," and its custody was not satisfactorily explained. However, plaintiffs did not object on the ground a proper foundation had not been laid. Their objection was, "I object to the introduction of the evidence upon the ground that the offer is irrelevant, incompetent and immaterial and is hearsay." Counsel's argument in support of the objection is set forth in the margin.[3] Obviously the evidence was relevant, material, and competent; and the rule permitting the reception of ancient documents in evidence is an exception to the hearsay rule.

Plaintiffs' objection to the evidence was not sufficient to preserve the point on review. We do not inquire whether

---

[3] "The basis of my objection is that the document does not show when the entry was made; it does not show that the books were carefully kept or what they were intended to be a record of all of Mr. Conger's transactions. The statement of $1,000.00 does not show whether he paid it, received it, valued it, or what. The entry does not show that this was a purchase from Mr. Stewart. It merely shows 'Tapo Oil stock, $1,000.00,' and may well have been no more than a jotting down of something he was to remember. There is too little to show to make it admissible, to tie it in to this litigation, to these shares of stock."

there was such a defect in the foundation for admission of the ledger as would have made it the duty of the court to have sustained a proper objection. The court was not given an opportunity to pass on the objection urged here. ■ Error cannot be predicated on the overruling of an objection when the particular grounds of the objection are not stated, unless they are obvious, or otherwise known to the court. "To entitle an objection to notice, it must not only be on a material matter, affecting the substantial rights of the parties, but its point must be particularly stated. This is not only a statutory regulation, but it is the uniform rule, so far as we are aware, of all Courts of Record. The party, as the authorities say, must lay his finger on the point of his objection to the admission or exclusion of evidence." (*Kiler* v. *Kimbal*, 10 Cal. 267, 268. And see *People* v. *Modell*, 143 Cal.App. 2d 724, 730 [300 P.2d 204]; *People* v. *Tolmachoff*, 58 Cal. App.2d 815, 826 [138 P.2d 61].) ■ Where an objection is in general terms and the alleged defect could have been cured by the party making the offer if the reason it was objected to had been given, a reviewing court will not consider a claim that the trial court erred when the precise ground of objection was not clearly or at all specified. ■ The court did not err in overruling the objection to the reception of the ledger in evidence.

■ It is argued the court erred in using the entries in the ledger "for the asserted truth of the assumed matter asserted by them." Plaintiffs rely on dictum in *Gwin* v. *Calegaris*, 139 Cal. 384 [73 P. 851], that (p. 389): "The rule as to ancient documents, as we understand it, does not import any verity to the recitals contained in these instruments. The documents themselves are presumed to be genuine, and the rule has no further effect." This dictum is not a correct statement of the law. Ancient documents would have no effect or potency as evidence unless they served to import verity to the facts written therein. The true rule is that an ancient document is admitted in evidence as proof of the facts recited therein, provided the writer would have been competent to testify as to such facts. (32 C.J.S. 662, § 745[4]; anno.: 6 A.L.R. 1437, 1444.)

---

[4]"'Ancient documents may be admitted in evidence as proof of the facts recited therein, provided the writers would have been competent to testify as to such facts. Such documents may, therefore, be received to prove or disprove title or possession, or the location of a boundary line, or the existence of a highway or right of way. They may also be

*Garbarino* v. *Noce,* 181 Cal. 125 [183 P. 532, 6 A.L.R. 1433], states (p. 130) : ''The deed of October 6, 1862, aforesaid, purported to convey the full title to the property described, including the ditch. Having been executed more than fifty years before the present controversy arose, it comes within the rules of evidence applicable to ancient deeds and hence the recitals therein relating to the property conveyed are competent evidence of the facts recited, even against strangers to the title. [Citations.] It is also competent as a declaration of the grantor while in possession, as evidence that he then claimed full ownership of the ditch and water right.'' (Also see *Ames* v. *Empire Star Mines Co., Ltd.,* 17 Cal.2d 213, 224 [110 P.2d 13].)

The entries in the ledger tend to show, as the court found, that E. L. Conger purchased the Tapo stock and paid $1,000 for it. They further tend to show he purchased the stock after May 1900.

The cross-action is not barred by laches. ■ ''Laches is not mere delay, but delay that works a disadvantage to another. A person is guilty of laches only where he has, by his conduct or negligence and delay, induced or suffered another to do or abstain from something, whereby the latter might be injured should he be allowed to enforce his rights.'' (*Carlson* v. *Lindauer,* 119 Cal.App.2d 292, 309 [259 P.2d 925].) There was no proof that the Conger heirs in any manner induced or suffered plaintiffs to do or abstain from asserting their claim, or that they have been prejudiced in any way by the lapse of time. Assuming, as plaintiffs argue, that the cross-complaint states a cause of action to quiet title to the stock certificates, that cause is not barred by laches. ■ ''Lapse of time alone is not sufficient to bar a suit to quiet title.'' (*Carlson* v. *Lindauer, supra,* p. 310.)

■ Plaintiffs assert that because the court concluded the letter of December 4, 1912, was, on the date of its delivery to Tapo ''and is now, a sale, transfer and assignment of all right,

admitted to prove matters of pedigree, heirship or widowhood; or to prove or disprove the identity of persons or land, or the existence of a power, or the authority of an executor or administrator to sell.

''A recital in an ancient deed or will of any antecedent deed or document, consistent with its own provisions, will after the lapse of a long period be presumptive proof of the former existence of such deed or document, especially in a case where nothing appears to rebut such presumption. Ancient documents coming out of the proper custody, and purporting on their face to show exercise of ownership, such as leases or licenses, have been admitted as being in themselves acts of ownership and proof of possession.'' (32 C.J.S. 662, § 745.)

title and interest'' which Stewart ''had or ever has had in and to'' the certificates to Conger, the Conger rights arose by reason of the letter and the right of action is barred by the four-year statute of limitations treating the cause of action as one on a written contract, or barred by the three-year statute if the cause of action be considered as one to quiet title. The cause of action stated in the cross-complaint is one to replace lost stock certificates. It is not predicated on a written contract and is not barred by the four-year statute.

The cross-action is not a suit to quiet title except in an incidental sense. Section 2483 of the Corporations Code provides the complaint in an action to replace lost certificates shall set forth that the owner ''does not know of any person, firm, or corporation that claims or may claim any interest in the certificate who is not specifically named as a defendant.'' ▆▆ The contention that the cross-action is barred by the three-year statute is based on the fact that the cross-complaint, in addition to stating the action was brought to replace lost certificates, said it was brought to establish the title to the certificates. This was merely a statement of a purpose of the action and not an allegation of fact. The cross-complaint pleaded the facts required by Corporations Code, section 2483, in this sort of action.[5] The judgment follows the statute. It decrees that the Conger heirs are the owners of the certificates, that Tapo issue new certificates, and that the Conger heirs give a bond. Neither Corporations Code, section 2482, nor its predecessor, Civil Code, section 328, which authorizes an action to replace lost certificates, limits the time within which such an action may be commenced. (See *Gallaher* v. *Iowa Oil Co.*, 139 Cal.App. 100 [33 P.2d 439], a proceeding commenced approximately 28 years after the loss and destruction of certificates, holding that the shareholder was not barred.) ▆▆ The general rule is that

---

[5]Corporations Code, section 2483, reads: ''The plaintiff shall set forth in a verified complaint all of the following:

''(a) The facts and circumstances relating to the loss or destruction of the certificate.

''(b) That he has not assigned, endorsed, transferred, hypothecated, or in any way disposed of the certificate except to a party defendant.

''(c) That he does not know of any person, firm, or corporation that claims or may claim any interest in the certificate who is not specifically named as a defendant.

''(d) A description of the certificate, giving so far as known the number of the certificate, the number of shares, and the name of any person in whose name the certificate may be registered.''

statutes of limitations have no application to an action to establish a lost instrument. (53 C.J.S. 1072, § 97.) Neither plaintiffs nor defendants had any knowledge of their respective claims to the certificates of stock until notice was given by Tapo shortly prior to the filing of the complaint by plaintiffs. The parties are in identical positions. Neither has been harmed by the delay of the other.

Finally, plaintiffs claim the letter of December 4, 1912, is not an enforceable contract in that it violates the statute of frauds. It is said it does not state the price paid or to be paid. The claim is based on the erroneous premise that the statute of frauds is applicable.

During the time in question Civil Code, section 1624, read:

"The following contracts are invalid unless the same or some note or memorandum thereof, be in writing and subscribed by the party to be charged, or by his agent:

"Four—An agreement for the sale of goods, chattels, or things in action, at a price not less than two hundred dollars, *unless the buyer* accept or receive part of such goods and chattels or the evidences, or some of them, of such things in action, *or pay at the time some part of the purchase money*; . . ." (Italics added.) (Code Am. 1873-1874, ch. 612, p. 241, § 190.)

This section expressly provides an exception where "the buyer . . . pays at the time some part of the purchase money." Section 1624 has no application to an executed contract. (*Kreling* v. *Walsh*, 77 Cal.App.2d 821, 832 [176 P.2d 965].) Everything said by Stewart in his letter of December 4, 1912, evidences a fully executed, as distinguished from an executory, contract. He specifically said "I sold" 5,000 shares of Tapo stock to Conger. He said he had no shares in Tapo and had had "none since I made sale to Mr. Conger"; that the shares standing in his name "properly belong to Mr. E. L. Conger." He stated in effect that Tapo should "re-issue" the certificates to Conger. The statement that Conger had informed him he had not received the certificates clearly indicates Conger had paid the purchase price. There is nothing in the letter indicating the necessity of the performance of any act by Conger to complete the sale. (See *Mills* v. *Jackson*, 19 Cal.App. 695, 698 [127 P. 655]; Rest., Contracts, §§ 178, 205.) And the inference from the entries in the ledger is that Conger had paid Stewart $1,000 for the stock before the letter was written. The inference is also patent from the foregoing that Conger had

accepted and assented to the passage of title to him. (Civ. Code, § 1624a, subdivision (3).)

It is argued the letter did not transfer title to Conger because it was not delivered to him. The letter is a confirmation of an earlier transfer of the shares from Stewart to Conger and, if necessary, a memorandum of what had transpired between them. Civil Code, section 1059, provides:

"Though a grant [which includes a transfer of shares of stock, (Civ. Code, §§ 1039, 1053)] be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases:

"1. Where the instrument is, by the agreement of the parties at the time of execution, understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or,

"2. Where it is delivered to a stranger for the benefit of the grantee, and his assent is shown, or may be presumed."

It appears from the letter it was understood by the parties that Tapo was to reissue the shares in the name of Conger, and thus effect a delivery. And, further, the letter was delivered to Tapo for the benefit of Conger, since it may be inferred it was to issue the certificates and deliver them to Conger. These consequences follow, contrary to the argument of plaintiffs, notwithstanding the fact that at the time in question the statute imposed a stockholder's liability on the registered owner of corporate stock. It is not essential, as between the parties, to the transfer of shares of stock that the certificates be delivered. (*Young* v. *New Pedrara Onyx Co.*, 48 Cal.App. 1, 17 [192 P. 55]; *Warfield* v. *Basso*, 62 Cal.App. 47, 51 [216 P. 48].) The cross-action is not barred by the statute of frauds.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.