[No. F056107. Fifth Dist. July 29, 2009.]

GE LEE et al., Plaintiffs and Respondents, v.
GEORGE TONG LEE et al., Defendants and Appellants.

**COUNSEL**

Law Office of Myron F. Smith and Myron F. Smith for Defendants and Appellants.

Law Offices of Jeffrey D. Bohn and Jeffrey D. Bohn for Plaintiffs and Respondents.

**OPINION**

**LEVY, Acting P. J.**—Appellants, George Tong Lee (George) and Kathy Maiker Lee (Kathy), challenge the trial court's finding that their interest in

property owned by various members of the Lee family was validly transferred to respondent, Fue Sue Lee (Fue Sue).[1] Appellants acknowledge that, following their request that the property be sold, they received $50,000 from George's mother and brother pursuant to an oral agreement. Appellants assert this payment was a no-interest loan. In contrast, George's mother and brother contend they bought George and Kathy's interest. Four years after receiving the payment, George and Kathy executed and delivered a quitclaim deed that transferred their interest in the property to Fue Sue.

Appellants argue the sale of their property interest violated the statute of frauds and therefore is invalid. Appellants further contend that the quitclaim deed was not sufficient to take the transaction outside the statute of frauds. Additionally, appellants assert that the trial court erred when it failed to exclude certain promissory notes that were produced only a few days before trial.

As discussed below, the deed was an executed contract and, as such, validly transferred the real property interest. Further, the trial court did not abuse its discretion when it admitted the disputed evidence. Accordingly, the judgment will be affirmed.

## BACKGROUND

In 1985, numerous members of the Lee family pooled their resources to purchase four contiguous five-acre parcels. Appellants owned a 50 percent interest in one of the parcels, referred to as "Lot 5."

In 1998, George spoke to his mother, Yeng Yang Lee (Yeng), about selling Lot 5. However, Yeng did not want to sell. Thereafter, George and Yeng orally agreed that George would receive $50,000. Yeng and George's brother, Vah Houa Lee (Vah), borrowed this money from other relatives and friends. These loans have been repaid.

Appellants argued that this $50,000 payment was an interest-free loan to be paid back when Lot 5 was eventually sold. However, Yeng and Vah testified that they purchased George and Kathy's interest in Lot 5. Vah further testified that, despite this purchase, the family wanted George to keep his name on the property because he is both educated and fluent in English.

In 2002, George was facing a lawsuit and decided he should have his name taken off the Lot 5 deed. George and Kathy prepared and executed a

---

[1] The parties are referred to by their first names for purposes of clarity. No disrespect is intended.

quitclaim deed conveying their interest in the subject property to Fue Sue. The consideration for the transfer was noted as "GIFT." Fue Sue is Vah's only child. George had Fue Sue also sign the deed and then sent it to relatives for recording. George, Kathy and Fue Sue were living in South Carolina at the time. However, before the deed was recorded, someone added Ge Lee (Ge) and Vong Lee as additional grantees.

In 2005, George had Fue Sue execute a deed reconveying Lot 5 to himself and Kathy.

Respondents Ge and Fue Sue filed the underlying complaint against appellants alleging causes of action for quiet title, slander of title, fraud, cancellation of instrument, intentional infliction of emotional distress, and constructive trust.

Following a bench trial, the court found that the $50,000 payment to George was a buyout of appellants' interest in Lot 5, not a loan. As to the 2002 deed, the court held that appellants did not intend to convey their interest to Ge and Vong Lee and therefore the transfer was invalid as to those grantees. However, the transfer to Fue Sue remained valid. The court further found that the 2005 deed to George was procured by misrepresentation and therefore was invalid. Accordingly, the court ruled in favor of Fue Sue and Ge on the quiet title and cancellation of instrument causes of action and in favor of Fue Sue on the slander of title and fraud causes of action.

## DISCUSSION

1. *The 2002 deed is not invalid under the statute of frauds.*

Under the statute of frauds, contracts "for the sale of real property, or of an interest therein" (Civ. Code, § 1624, subd. (a)(3)) "are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent" (Civ. Code, § 1624, subd. (a)). The statute of frauds primarily serves an evidentiary purpose. (*Sterling v. Taylor* (2007) 40 Cal.4th 757, 766 [55 Cal.Rptr.3d 116, 152 P.3d 420].) It requires reliable evidence of the existence and terms of the contract so as to prevent enforcement through fraud or perjury of a contract that was never in fact made. (*Ibid.*)

Appellants contend the 1998 contract to sell their interest in Lot 5 is invalid for failure to comply with the statute of frauds. Further, appellants argue, the 2002 deed does not satisfy the statute as a memorandum of the oral agreement because it does not accurately reflect the terms of the sale.

■ However, the statute of frauds does not apply to an executed contract. (*Kirkpatrick v. Tapo Oil Co.* (1956) 144 Cal.App.2d 404, 414 [301 P.2d 274].) A valid deed, i.e., one that is executed by the grantor and delivered to the grantee, is an executed contract. (Civ. Code, §§ 1040, 1054; *Estate of Stephens* (2002) 28 Cal.4th 665, 672 [122 Cal.Rptr.2d 358, 49 P.3d 1093].)

Here, it is undisputed that appellants executed the 2002 quitclaim deed and delivered it to Fue Sue with the intent to transfer their interest in Lot 5 to Fue Sue. Thus, the 2002 deed was an executed contract. Accordingly, the statute of frauds does not apply to this transfer.

2. *Although altered, the 2002 deed is valid as to Fue Sue.*

As discussed above, appellants executed the 2002 deed and delivered it to the grantee, Fue Sue. Appellants thereafter sent the deed to California to be recorded. However, before it was recorded, someone other than appellants or Fue Sue added two additional grantees to the deed.

The trial court struck these two additional grantees but held that the deed nevertheless validly transferred appellants' property interest to Fue Sue. Appellants contend that, because the 2002 deed was altered, the trial court should have stricken the entire deed as void.

Appellants rely on *Montgomery v. Bank of America* (1948) 85 Cal.App.2d 559 [193 P.2d 475] to support their position. In *Montgomery*, the deed was altered without the grantor's consent before the deed was delivered to the grantee. Under those circumstances, the court held the deed was void. (*Id.* at p. 563.) The court noted that "[a] void instrument such as an undelivered or a forged deed does not convey anything and cannot be made the foundation of a good title." (*Id.* at p. 564.)

■ Here, however, the grantors executed the deed and delivered it to the grantee before the deed was altered by a third party. There is no California case addressing this precise issue. Nevertheless, analogous situations have arisen. For example, if a trustee, who holds bare legal title in trust for the beneficiaries, alters the deed, the deed is not invalidated. It is a material alteration by a party to the deed that renders it void. (*Bumb v. Bennett* (1958) 51 Cal.2d 294, 303 [333 P.2d 23].) Further, in the context of an executed contract, it has been held that a third party's alteration of that contract does not void the contract in its entirety. Rather, the contract is enforceable in accordance with its original terms. (*Walsh v. Hunt* (1898) 120 Cal. 46, 53 [52 P. 115]; *American Trust Co. v. Greuner* (1936) 13 Cal.App.2d 279, 282 [56 P.2d 967].)

Applying these authorities here, it must be concluded that the deed is valid as to Fue Sue. The deed was executed and delivered to Fue Sue and thus vested title in Fue Sue before a third party altered the deed.

Other jurisdictions have also adopted this rule. In *Julian v. Petersen* (Utah Ct.App. 1998) 966 P.2d 878, the court noted that a distinction exists between alterations on instruments that are "executory" and those that are "complete." While the alteration of an undelivered deed renders the conveyance void, the alteration of a deed after title has vested in the grantee does not invalidate the instrument insofar as it operates as a conveyance to the grantee. In other words, the alteration does not divest the original grantee of title. (*Id.* at pp. 879–880.) This is the settled rule in a number of jurisdictions including New York, Maryland, Massachusetts, Georgia, Illinois, Indiana, Texas, Tennessee, Kentucky, Wisconsin, Missouri and Alabama. (*Id.* at p. 880; *Citizens Bank of Moultrie v. Taylor* (1929) 169 Ga. 203, 209 [149 S.E. 861, 863].)

In sum, the trial court correctly ruled that the alterations to the deed that were made after it was delivered to Fue Sue did not divest Fue Sue of title. The deed is void only as to the individuals who were added as grantees after delivery, i.e., Ge and Vong Lee.

3. *The trial court did not abuse its discretion in admitting the promissory notes into evidence.*

Three Lee family members, Chue Moua, Kee Lee (Kee) and Nancy Lee (Nancy), testified that they loaned money to Vah in 1998. During this testimony, respondents offered promissory notes into evidence that documented these loans. These promissory notes were nearly identical. The notes stated that the particular individual agreed to lend a particular amount to Vah "and include family members to purchase a piece of property locate[d] at 8207 North Thompson Avenue, Clovis, California, 93611, 4.85 acres land with an older house. They agree to pay me back within three years and there is no interest."

Appellants objected to the admission of these promissory notes on the ground that respondents had not timely complied with a discovery request to produce them. Respondents provided the promissory notes to appellants five days before trial. Appellants noted that, when Ge was deposed two months earlier, he testified that he had some receipts but did not have any documentation in support of "this purchase." In response, respondents' attorney represented that Ge did not come into possession of the promissory notes until five days before trial and that these notes were immediately turned over to appellants. The trial court admitted the promissory notes into evidence.

Appellants contend the trial court erred when it did not impose an evidence sanction prohibiting respondents from introducing the promissory notes in

evidence based on their failure to timely comply with the discovery request to produce any documents supporting the sale. According to appellants, Ge testified in his deposition that he had such documents and yet he failed to produce them for two months.

Code of Civil Procedure section 2023.030, subdivision (c), provides that the trial court *may* sanction any party engaging in a misuse of the discovery process by prohibiting that party from introducing designated matters in evidence. A failure to respond to an authorized method of discovery may constitute misuse of the discovery process. (*Vallbona v. Springer* (1996) 43 Cal.App.4th 1525, 1545 [51 Cal.Rptr.2d 311].) Nevertheless, absent unusual circumstances, such as repeated and egregious discovery abuses, two facts are generally prerequisite to the imposition of a nonmonetary sanction. There must be a failure to comply with a court order and the failure must be willful. (*Biles v. Exxon Mobil Corp.* (2004) 124 Cal.App.4th 1315, 1327 [22 Cal.Rptr.3d 282].)

A trial court has broad discretion when imposing a discovery sanction. Accordingly, the trial court's order will not be reversed on appeal in the absence of a manifest abuse of discretion that exceeds the bounds of reason, resolving all evidentiary conflicts in favor of its ruling. (*Pratt v. Union Pacific Railroad Co.* (2008) 168 Cal.App.4th 165, 183 [85 Cal.Rptr.3d 321].)

Here, while appellants allege that respondents had the promissory notes at least two months before they were produced, respondents' counsel represented, and the court found, that those promissory notes came into respondents' possession shortly before trial. Further, as appellants' counsel acknowledged at trial, Ge's deposition testimony concerned receipts, not promissory notes. Moreover, these receipts were attached to the first amended complaint.

Under these circumstances, the trial court did not abuse its discretion when it refused to impose an evidence sanction. The record supports the trial court's finding that the promissory notes were turned over to appellants immediately after they came into respondents' possession. Further, no court order was violated and there is no evidence that respondents willfully failed to comply with appellants' discovery requests.

Appellants additionally argue that the court erred in admitting testimony given by Chue Moua, Nancy, and Kee that Vah told each one of them that the purpose of the loan was to purchase George's interest in Lot 5. However, appellants' objections to this testimony as hearsay were sustained and the testimony was stricken. Thus, no error occurred.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondents.

Gomes, J., and Dawson, J., concurred.