Filed 5/29/13  Yuan v. Wang CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| XIAO YAN YUAN, | B233178 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GC041277) |
| v. | |
| ANDY WANG, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County,

Jan A. Pluim, Judge.  Affirmed as modified.

Law Offices of Edward C. Tu, Edward C. Tu; Law Offices of

Gary Hollingsworth, Gary Hollingsworth; Law Office of Philip C. Law and

Philip C. Law for Defendants and Appellants.

Law Office of Steven P. Scandura and Steven P. Scandura for Plaintiff and

Respondent.

## INTRODUCTION

Defendants Andy Wang and Jenney Wang (collectively, defendants) appeal from a judgment entered in favor of plaintiff Xiao Yan Yuan (plaintiff) following a bench trial on her breach of contract action. The judgment awarded plaintiff $865,593.69 in damages and held that plaintiff was entitled to one half of the proceeds from the sale of certain real property in California. Defendants contend that (1) the trial court committed reversible error in failing to defer to the Chinese courts and (2) there is no substantial evidence to support the judgment.[1] We affirm.

## FACTUAL BACKGROUND

Plaintiff met defendant Andy Wang (Andy)[2] in Shanghai, China in 1995. Plaintiff, a Chinese citizen, had recently graduated from The Textile University of China. Andy, an American citizen who resides in California, was in the business of selling software used to design clothing. Plaintiff and Andy started dating that year. At all relevant times, defendant was married to Jenney Wang (Jenney) who also resides in California.

In 1996, plaintiff and Andy went into business together. They formed a company called Shanghai PGM to act as a distributor for software sold by Andy.

---

[1] Defendants raise a number of new arguments in their reply. We ordinarily will not consider an argument raised for the first time in a reply brief because to do so would deprive the respondent of an opportunity to counter the argument in its respondent's brief. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764-765.) Defendants have shown no reason for us to deviate from that rule here, so we will not consider these arguments.

[2] For simplicity and clarity, we use their first names to refer to the individual defendants. We intend no disrespect or undue familiarity.

Andy was physically present at the company's office every other month, and admitted that, at all other times, plaintiff ran the company.

In 1999, plaintiff became pregnant with Andy's child. They decided that the baby should be born in the U.S. After plaintiff traveled to the U.S., she asked Andy to go to China to purchase a property for her and their child to live in (Shanghai Property), and they agreed that the property would eventually belong to their child. He purchased the Shanghai Property on June 22, 2000, with Shanghai PGM's money. Their son, Steven Wang (Steven), was born on July 22, 2000. When plaintiff returned to China several weeks later, she moved into the property with her son. Andy purchased a house in Arcadia, California (Arcadia Property) in August 2001 and title was placed in Andy's and plaintiff's names as joint tenants.

In February 2002, the parties ended their romantic and business relationship. Andy withdrew from his role at Shanghai PGM. Plaintiff and Steven continued to live at the Shanghai Property and Andy agreed to maintain the Arcadia Property.

In 2005, Andy sent plaintiff a letter stating as follows: "In regard with the [Shanghai] property . . . I don't feel appropriate for you to continue to occupy and use. . . . [¶] Please move out from the property within forty five days upon receipt of this letter, and return the real property back to me. [¶] In addition, please think about the half of the property in the United States . . . . Let me [know] what your thoughts are on the disposition." Plaintiff did not respond to the letter.

In July 2007, Andy sought to obtain custody of Steven. His request was rejected by the Chinese court. Andy was "unhappy" he "lost that lawsuit," and therefore, sought

3

to evict plaintiff and Steven out of the Shanghai Property. He prevailed in the eviction proceedings. The Chinese court found that because he was the titleholder, he was entitled "to possess, to use, to make profits and to disposition [sic] of the real property in question." Plaintiff and Steven were evicted from the property in 2008. Since the eviction, Andy has placed a $1,000,000 mortgage on the Shanghai Property.

### PROCEDURAL HISTORY

Plaintiff filed this action on August 6, 2008 alleging causes of action for breach of contract, breach of fiduciary duty, unjust enrichment, partition and sale, accounting and dissolution of partnership. The Second Amended Complaint alleged that plaintiff and Andy had entered into an oral agreement to purchase and maintain the Shanghai and Arcadia properties and that he had breached this agreement by evicting plaintiff and their son from the Shanghai Property and retaining all the rents from the Arcadia Property. Plaintiff sought damages consisting of half of the value of the Shanghai Property, half of the costs of maintaining the Shanghai Property, half of the income derived from the rental of the Arcadia Property, and partition and sale of the Arcadia Property.

Jenney was also named as a defendant. The complaint alleged that Jenney had "converted to herself funds deposited by Plaintiff which were intended for the benefit of the partnership. . . . " The complaint further alleged that "as the spouse of Defendant ANDY WANG who was actively engaged in the above alleged acts of misconduct, Defendant JENN[E]Y WANG is liable to Plaintiff pursuant to [] Family Code sections 910, et seq."

4

Andy filed a cross-complaint against plaintiff alleging causes of action for breach of written agreement, breach of oral agreement, reimbursement and contribution, and unjust enrichment. The trial court dismissed the cross-complaint, finding that (1) Andy never produced a written agreement, (2) the trial court did not have jurisdiction over an oral agreement entered into solely in China, (3) Andy had admitted that his claim for costs to be reimbursed by plaintiff was exceeded by the income owed to her, and (4) the fourth cause of action was predicated on the other three causes of action which failed.

At the bench trial, plaintiff testified that she was responsible for forming Shanghai PGM. Andy testified that the company was his idea and that he appointed plaintiff to serve as its representative. Andy acknowledged that plaintiff was listed as the owner of the company in government records, but claimed that, as a foreigner, he was not allowed to be the legal representative of the company.

Plaintiff also testified that it was her idea to buy the Shanghai Property. When she returned to China after her son's birth, she discovered that only Andy's name was on the property title. She testified that he told her that, irrespective of the title, the house was hers and would eventually belong to Steven when he grew up. Plaintiff did not seek to transfer the title to her name because of the high taxes levied on such a transfer.

According to Andy, he purchased the Shanghai Property without plaintiff's knowledge for her and the child to live in. He testified that he also decided on his own accord to buy the Arcadia Property "for" plaintiff. According to plaintiff, she and Andy decided together to buy the Arcadia Property as an investment for their child.

Plaintiff further testified that, when she and Andy ended their relationship in 2002, they reaffirmed their agreement that the Shanghai and Arcadia properties would be transferred to Steven when he reached 18 years old. Per this agreement, plaintiff and Steven would continue living in the Shanghai Property and Andy would manage the Arcadia Property until that time.

Andy's account of the agreement differed. He testified that he did not give the Shanghai Property to plaintiff or Steven, but only let them live there until Steven was 18 years old. He stated that he gave plaintiff the company, Shanghai PGM, as well as other assets in China, and, in exchange, plaintiff had agreed (1) not to seek child support from him, (2) to allow him to visit Steven, and (3) to give her interest in the Arcadia Property to Jenney. Andy testified that after his relationship with plaintiff ended, she prevented him from visiting Steven. Plaintiff testified that Andy had never attempted to visit Steven.

The court entered judgment in favor of plaintiff. The court found that Shanghai PGM was "a joint enterprise between Plaintiff and Defendant with each entitled to 50 percent equitable ownership in Shanghai PGM," and that the Shanghai Property was purchased with company money. The court accepted plaintiff's testimony that Andy had told her the Shanghai Property was hers and would eventually be Steven's when he turned 18 years old. The court awarded plaintiff half of the value of the Shanghai Property, half of the value of the Arcadia Property, and half of the income generated by the Arcadia Property. Judgment was entered on March 11, 2011 and Andy filed a timely appeal.

6

## DISCUSSION

1.    *Standard of Review*

A trial court's decision based on undisputed facts is subject to de novo review by the appellate court. (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 501.) "The substantial evidence standard of review applies to both express and implied findings of fact made by the court in its statement of decision." (*Ibid*.) "Under the substantial evidence standard of review, our review begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the trial court's factual determinations." (*Ibid*.) We apply a de novo standard of review to that part of the trial court's decision based on undisputed facts and a substantial evidence standard of review to the court's factual findings based on testimony and evidence at trial.

2.    *China As the Proper Forum*

Defendants raise three arguments with respect to this issue. They contend that (1) plaintiff should have brought suit in China, (2) the court lacked subject matter jurisdiction over this action, and (3) the Chinese court's judgment in the eviction proceeding barred the court from ruling on the question of ownership of the Shanghai Property.

In support of the argument that plaintiff should have brought suit in China, defendants cite to the maxim that "questions relating to control of real property are to be determined by the law of the jurisdiction in which the property is located." (*Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126, 136.) Defendants' argument fails to point out how

7

the court erred but only faults plaintiff for filing this action in California. Moreover, the principle that realty is exclusively subject to the law of the state within which it is situated does not support the argument that this case should have been brought in China but only speaks to what law applies to questions relating to the control of real property.

Defendants also argue that China had a greater interest in the subject oral agreement, and that where "only one state 'has a legitimate interest in the application of its law and policy . . . the law of the interested state should be applied.' [*Hurtado v. Superior Court* (1974) 11 Cal.3d 574, 580.]" Defendants appear to be arguing that China was the proper forum for this action because Chinese law governed the dispute. Under the principle cited, "the forum state will generally apply the substantive law of a foreign sovereign to causes of action which arise there. [Citations.]" (*Wong v. Tenneco, Inc., supra,* 39 Cal.3d at p. 134.) If, as defendants appear to believe, plaintiff's causes of action arose in China, then the conclusion is not that the Chinese courts had exclusive jurisdiction over the dispute but that the trial court should have applied Chinese law to the dispute.

Defendants also argue that the trial court did not have subject matter jurisdiction over this action because the subject oral contract was entered into primarily in China, the contract was to be performed in China, and plaintiff was a Chinese citizen. "Subject matter jurisdiction is the court's power to hear and resolve a particular dispute or *cause of action* . . . ." (*Donaldson v. National Marine, Inc.* (2005) 35 Cal.4th 503, 512.) "The California Constitution confers broad subject matter jurisdiction on the superior court. [Citation.] The subject matter jurisdiction of the superior court is limited in

8

certain circumstances, however, such as in areas of exclusive federal jurisdiction [citation], matters within the exclusive jurisdiction of an administrative agency [citation], and where jurisdiction is vested in a reviewing court as a result of the filing of a notice of appeal [citation]." (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1029.) None of those circumstances are present here. Moreover, the evidence clearly supports the conclusion that the contract involved an interest in California property. Therefore, defendants have not shown that the court lacked subject matter jurisdiction over this action.

Furthermore, the court clearly had personal jurisdiction over both parties and was capable of awarding damages. While plaintiff is a Chinese citizen, Andy is a U.S. citizen. Defendants both reside in California. (*Burnham v. Superior Court of California, County of Marin* (1990) 495 U.S. 604, 619.) In addition, defendants' failure to object based on personal jurisdiction at the outset of the case constitutes a waiver of the issue. (Code of Civil Procedure section 418.10(e)(3).)

Defendants point out that the Chinese court in the eviction proceedings determined that Andy was the proper owner of the Shanghai Property. Defendants appear to imply that the Chinese court's judgment should have operated as res judicata with respect to the question of who owned an interest in the Shanghai Property. The court in its Statement of Decision, however, stated that "[a]ll attorneys hereto agree that ownership was not decided by the Chinese Court." The record also reflects that defendants' attorney did not argue that the Chinese court had decided the ownership of

9

the Shanghai Property.[3]  Defendants therefore forfeited this argument on appeal.

(*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2006)

136 Cal.App.4th 212, 226.)

      3.     *Statute of Limitations*

Defendants contend the trial court erred by finding in favor of plaintiff on the

breach of contract cause of action because the applicable statute of limitations had run.

Code of Civil Procedure, section § 339 provides for a statute of limitations of two years

for an action brought on the breach of an oral contract.  " 'Resolution of the statute of

limitations issue is normally a question of fact.' " (*Cleveland v. Internet Specialties*

*West, Inc*. (2009) 171 Cal.App.4th 24, 31.)  "As a general rule, the statute of limitations

'cannot run before plaintiff possesses a true cause of action, by which we mean that

events have developed to a point where plaintiff is entitled to a legal remedy, not merely

a symbolic judgment such as an award of nominal damages.' [Citation.]  A wrongful

act . . . 'causing only nominal damages, speculative harm, or the threat of future harm—

not yet realized—does not suffice to create a cause of action . . . .' [Citation.]  Instead,

---

[3]     "The Court . . . are you suggesting to this court that there's more than an eviction in this judgment or what?

Mr. Tsay [Defendants' counsel]:  Well, I think I'll reserve for the court to make any judgment.

The Court:  No, I'm not going to make any judgment.  I don't know.  I'm just asking you.

Mr. Tsay:  In the judgment it stated that it evaluated the evidence in China.

The Court:  Sir, I don't understand what you guys are talking about. . . .  [¶] . . .
     What is this document going to show me?  Is it going to show me something about if the Chinese court said he owns it?  Is this his personal property - - I might be interested, but I don't even have a certified copy here.

Mr. Tsay:  All right.  Your honor, we'll move on to the next subject.  And you're - - the court's points are taken - - well-taken."

the cause of action does not accrue, and the statutory period does not commence to run, until the plaintiff sustains actual and appreciable harm." (*Garver v. Brace* (1996) 47 Cal.App.4th 995, 999-1000.)

The court concluded that the two-year statute began to run in 2007 when defendant commenced the eviction proceeding in China. Defendants argue that the statute of limitations began to run in 2000 when plaintiff discovered that title to the Shanghai Property was in Andy's name. In the alternative, defendants argue that the statute of limitations was triggered in 2005 when defendant sent a letter to plaintiff indicating his intent to evict her.

Substantial evidence, however, supports the trial court's determination that the statute of limitations began to run in 2007 when Andy took steps to evict plaintiff from the Shanghai Property. At that point, plaintiff had suffered "actual and appreciable harm." (*Garver v. Brace, supra,* 47 Cal.App.4th at p. 1000.) Both plaintiff's and Andy's testimony established that, prior to that time, Andy had not taken any concrete action to deprive plaintiff of her interest in the Shanghai Property. Therefore, the court did not err by finding that plaintiff timely filed this action in 2008.

4.    *Statute of Frauds*

Defendants also contend that the statute of frauds invalidated plaintiff's oral contract with defendant.[4] "Under the statute of frauds, contracts 'for the sale of real

---

[4]    Defendants devote one sentence to the argument that plaintiff did not have standing to allege breach of contract because only Steven was injured by the alleged breach. Prior to trial, plaintiff sought to amend her complaint to designate herself as guardian ad litem for her son on the grounds that he was the intended third party

property, or of an interest therein' (Civ. Code, § 1624, subd. (a)(3)) 'are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent' (Civ. Code, § 1624, subd. (a))." (*Lee v. Lee* (2009) 175 Cal.App.4th 1553, 1556.)  However, "[p]art performance allows enforcement of a contract lacking a requisite writing in situations in which invoking the statute of frauds would cause unconscionable injury.  [Citation.]  '[T]o constitute part performance, the relevant acts either must "unequivocally refer[]" to the contract [citation], or "clearly relate" to its terms.  [Citation.]  . . .  In addition to having partially performed, the party seeking to enforce the contract must have changed position in reliance on the oral contract to such an extent that application of the statute of frauds would result in an unjust or unconscionable loss, amounting in effect to a fraud. [Citations.]" (*Secrest v. Security National Mortgage Loan Trust 2002-2* (2008) 167 Cal.App.4th 544, 555.)

The court found that the subject contract was exempt from the statute of frauds because it had been partially performed.  The Statement of Decision explained that "[p]artial performance of the oral agreement(s) is an exception [to the statute of frauds]. Plaintiff did nothing to change title to the Shanghai property and continued to live in that property believing what Andy Wang had told her.  She obviously did what she did

beneficiary of his parents' oral agreements.  Defendants successfully opposed the motion but now argue that Steven was, in fact, the party injured by the breach of contract.  Defendants are estopped from asserting this contrary position as a ground for reversal on appeal.  (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 403.)  Furthermore, issues to which an appellant provides no argument or discussion are deemed waived and are properly disregarded.  (*Huntington Landmark Adult Community Assn. v. Ross* (1989) 213 Cal.App.3d 1012, 1021.)

to her detrimental reliance. She gave up any legal rights she had believing in his oral agreements."

Substantial evidence supports the trial court's finding. Plaintiff testified that she and Andy had agreed that the Shanghai Property was hers to raise their son in and that it would go to Steven when he turned 18. It was undisputed that plaintiff and Steven had lived at the Shanghai Property from 2000 until their eviction in 2008. In addition, it was undisputed that plaintiff did not attempt to transfer title to the property into her name. Accordingly, there was substantial evidence that plaintiff and Andy had partially performed the contract, and that plaintiff relied on the contract to her detriment by failing to take action to change the title.

5. *Breach of Fiduciary Duty*

Defendants argue there was no substantial evidence that defendant breached his fiduciary duty to plaintiff because after they "terminated their relationship around February, 2002 [they] thereafter could no longer be said to be in any confidential or fiduciary relationship." "[T]he existence of a confidential relationship is a question of fact . . . ." (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369, 383.) " '[F]iduciary' and 'confidential' have been used synonymously to describe ' . . . any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he [or she] voluntarily accepts or assumes to accept the confidence, can take no advantage from his [or her] acts

13

relating to the interest of the other party without the latter's knowledge or consent. . . . " ' [Citations.]" (*Id.,* at p. 382.)

Here, title to the Arcadia Property was placed in Andy's and plaintiff's names as joint tenants. Plaintiff testified that Andy agreed to manage the Arcadia Property until Steven turned 18 years old. Therefore, there was substantial evidence that Andy had voluntarily accepted plaintiff's confidence to manage the property for both of their benefits, and thus, owed a fiduciary duty to plaintiff.

6. *Unfair Enrichment*

Defendants argue there was no substantial evidence that Andy unjustly retained the rents from the Arcadia Property because it was undisputed that plaintiff had agreed to allow him to manage the property and had never discussed the allocation of rents and expenses with him. However, there was substantial evidence that both plaintiff and Andy owned the Arcadia Property and were each "entitled to one-half of the value of the Arcadia property." Therefore, the court did not err by finding that defendant's retention of all the income generated by that property was unjust as the evidence established he was only entitled to one-half.

7. *Defendant Jenney Wang*

Defendants also contend there was no evidence that Jenney engaged in any wrongful act. The complaint alleged that Jenney converted plaintiff's funds. Jenney did not testify at trial and there was no evidence presented as to her receipt of funds belonging to plaintiff. Plaintiff contends that the record established that Jenney had

14

received money from Shanghai PGM and controlled the income generated by the Arcadia Property. Plaintiff's citations to the record, however, do not support this.

In the alternative, plaintiff argues that Jenney is liable to plaintiff pursuant to Family Code section 910 which provides that "the community estate is liable for a debt incurred by either spouse before or during marriage . . . . " Under Family Code section 910, a non-wrongdoing spouse may be named as a defendant in a civil action for purposes of determining community property liability. (*11601 Wilshire Associates v. Grebow* (1998) 64 Cal.App.4th 453.) Here, Jenney was liable, to the extent of her share in the community property based on Andy's wrongful conduct. The court found that Andy had breached his oral contract with plaintiff by retaining all of the income generated by the Arcadia Property and evicting plaintiff from the Shanghai Property. Therefore, although defendants are correct that there was no evidence that Jenney had engaged in any wrongful act, the trial court did not err in entering judgment against her to the extent of her interest in the community estate.

The judgment, however, does not distinguish between Jenney's individual liability and her community responsibility. When a non-debtor spouse is named solely in her capacity as co-representative of the community estate "any judgment that issued [is] limited to their community responsibility." (*Reynolds and Reynolds Co. v. Universal Forms, Labels* (C.D. Cal., 1997) 965 F.Supp. 1392, 1396.) Accordingly, "judgment against the non-debtor spouse" should be " 'specifically limited with a direction that it be satisfied only out of' such property made liable by statute, and not as a general judgment against the individual spouse." (*Ibid.* citing *Credit Bureau of*

15

*Santa Monica Bay Dist., Inc. v. Terranova* (1971) 15 Cal.App.3d 854, 857.) Therefore, the judgment should be modified to reflect that Jenney's liability is limited to her community responsibility.

      8.    *Admission of the Appraisal Into Evidence*

Defendants finally argue that the court erred in admitting the appraisal of the Shanghai Property into evidence because Andy never authorized the performance of this appraisal. Although defendants' counsel argued during trial that Andy did not authorize the appraisal, Andy did not provide any testimony on the subject. Moreover, defendants do not argue that the appraisal was inaccurate. Therefore, the court did not err in overruling defendants' objection.

## *DISPOSITION*

We modify the judgment to reflect that Jenney's liability is limited to her community responsibility and the extent of her interest in the community estate and affirm the judgment as so modified.  Plaintiff shall recover her costs on appeal.

***NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS***

CROSKEY, Acting P. J.

WE CONCUR:

KITCHING, J.

ALDRICH, J.

17